Joseph GRAHAM
and
Margaret Froelich
and
Beatrice McKeon
and
George M. Sutherland
v.
Jack SOLONER, President,
and
Robert C. Brennan, Secretary-Treasurer,
and
American Bakery & Confectionery Workers International Union, AFL–CIO, Local 492.

Civ. A. No. 33876.

United States District Court
E. D. Pennsylvania.

Aug. 27, 1963.

Perrin C. Hamilton, Hamilton, Darmopray & Malloy, Philadelphia, Pa., for plaintiffs.

Edward Davis, Philadelphia, Pa., for defendants.

JOSEPH S. LORD, III, District Judge.

### Findings of Fact

1.  The plaintiffs are employed by the National Biscuit Company (Nabisco) in the City of Philadelphia.

2.  The defendants are the officers of Local 492, American Bakery & Confectionery Workers International Union, AFL–CIO, which is the Union at Nabisco.

3.  Plaintiffs were not members in good standing, having failed to pay fines imposed for non-attendance at meetings. A member who is not in good standing is ineligible to vote at election for union officers, but may participate in other union affairs.

4.  In November of 1961, local elections were to take place and Robert Gartner, who is a "spokesman" or "leader" of a minority group within the Local Union was a candidate for trustee. Plaintiffs are members of that minority group.

5.  Prior to the election, the defendants, Soloner and Brennan, informed the membership that unless a member was "paid up" both in fines and dues, he would not be permitted to vote in the pending election.

6.  On November 18, 1961, some four days prior to the election, Gartner, who was a paid-up member and eligible to vote, led a group of ineligible members, including all plaintiffs except Sutherland, to the vicinity of the offices of the Local and they proceeded to picket the offices of the Local.

7. The banners carried by the pickets bore the legend: "Brennan and Soloner Dictators of Philadelphia". These signs were addressed to the Secretary of Labor and the United States Attorney General.

8. Gartner was defeated in the election for the office of trustee.

9. Gartner and plaintiffs began writing a series of letters to the defendant officers, requesting an "appeal" of the election and alleging that members of the Local were illegally deprived of voting rights. This "appeal" was held to be without merit by the Local officers.

10. Subsequently, the plaintiffs filed a self-styled appeal to the International Union's Secretary-Treasurer in Washington, D. C., which initiated an investigation of the matter.

11. The appeal was denied by the International because the plaintiffs failed to follow the Union Constitution, which requires specific charges to be made against the accused party.

12. After this denial, the plaintiffs contacted the Department of Labor and requested an investigation.

13. The Bureau of Labor-Management Reports conducted an investigation and concluded that no violation occurred which may have affected the outcome of the election.

14. In December of 1962, the defendant Brennan, in his individual capacity as a union member, addressed a letter to himself in his official capacity as secretary-treasurer of the Local and made charges against the plaintiffs.

15. These charges alleged that the plaintiffs engaged in unauthorized picketing of the Local Union headquarters and that they displayed signs which contained disparaging remarks of specific officers of the Local. Plaintiffs were also charged with bad faith in taking their appeal to the International Union and in seeking the assistance of the Department of Labor. Another charge concerned the plaintiffs' failure to pay fines for non-attendance at meetings.

16. All plaintiffs, except Sutherland, were found guilty of unauthorized picketing and fined $50.00. All plaintiffs were also found guilty of bad faith in proceeding to the International Union and the Department of Labor with their appeals and fined $25.00. All plaintiffs were also found guilty of failing to attend meetings and failing to pay fines of $1.00 for non-attendance, and were fined $15.00. For all of these offenses, they were suspended from the Union for a period of one year.

17. The letters notifying the plaintiffs of these decisions were dated March 7, 1963, and they advised the plaintiffs regarding appellate procedures according to Article XX, § 4, of the Constitution of the International Union.

18. This Article in § 4(a) requires that the appeal be filed with the International Union within 15 days after receipt of the decision appealed from and § 4(c) requires compliance with the judgment appealed from before the appeal is taken, unless the judgment is stayed by the International President for good cause.

19. The plaintiffs filed their appeals by letter dated March 20, 1963, but they refused to pay the fines and their appeals were denied because of their non-compliance with § 4(c) on May 20, 1963.

20. The instant civil action was filed on July 23, 1963, wherein the plaintiffs claim irreparable harm will result to them because:

(a) they will be denied their right to vote on the result of the new contract negotiations, and

(b) they will be denied their right to participate in the possible strike vote should the contract negotiations fail.

## Discussion

With one exception, to which I shall refer presently, this case involves questions identical to those decided by my Brother Wood in Gartner v. Soloner, et al., 220 F.Supp. 115 (E.D.Pa., 1963). There is no need to restate here Judge Wood's conclusions as to the applicability of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.

C.A. §§ 401–531, its violation by defendants and the exhaustion by plaintiffs of their intra-union remedies. Suffice it to say that in respect to the facets of this case that are identical to Gartner, I am fully in accord with the reasoning and conclusions of Judge Wood.

As to the discipline imposed for picketing, defendants make the additional argument (apparently not made in Gartner) that § 101(a) (2), 29 U.S.C.A. § 411(a) (2), guarantees freedom of expression only as among union members themselves, and gives no protection from discipline for public expression. I cannot accept such a restrictive reading of the Section. The essential purpose of the Act was to broaden, not to constrict, democratic safeguards for union members. To say that a union member may not, without fear of reprisal, exercise a right guaranteed to all citizens by the First Amendment would impose on union democracy a boundary unwarranted both by the underlying philosophy and the plain language of the Labor-Management Reporting and Disclosure Act.

The clear intent of Congress in enacting this legislation was to "prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain." Salzhandler v. Caputo et al., 316 F.2d 445, 449 (C.A. 2, 1963). To demand confinement of such criticism within the meeting-room walls would, or could, rob it of vitality and efficacy.

The Act was originally drafted and passed by the Senate with a freedom of speech section that was absolute. See 105 Congressional Record 5810, 5827, (daily ed. April 22, 1959). By subsequent amendment, the only two express exceptions to absolute freedom from punishment for expression of opinion were added. Neither exception applies here.[1]

Finally, the language of Section 101 (a) (2) is plain:

"Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; * * *."

Nothing in this language remotely indicates that plaintiffs' activities were outside its protection. Certainly, these plaintiffs were meeting and assembling when they picketed and they were expressing views,—rights specifically safeguarded by the Act.

I come now to the one essential difference between this case and Gartner. The latter had paid his $1.00 fine for non-attendance; these plaintiffs have not. The Local Union Constitution and By-laws, Article VIII, Section 11, expressly provides that failure to pay fines disqualifies a member from voting *in an election*. Section 101(a) (1) of the L.M. R.D.A. provides:

"Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

Article VIII is, in my judgment, a perfectly reasonable rule. It is eminently proper for a union to encourage attendance at meetings and to impose sanctions for non-attendance. On questions other than elections, e. g., contract approval, the member is free to vote. However, plaintiffs have now lost that right, too, for they are under a year's suspension. Having concluded, with Judge Wood, that the suspension for picketing and for appealing an election result to the International and the Department of Labor was illegal, I do not reach the question of whether it would be manifestly unreasonable to impose a year's suspension for failure to pay a one dollar fine. The decision of the Execu-

---

1. Unions were given power to enforce reasonable rules (1) as to the responsibility of members toward the organization as an institution and (2) to prevent interference with the union's contractual and legal obligations.

tive Board makes it clear that the suspension was not imposed for any single act of alleged misconduct, but was based, in the language of the Board, upon " * * * the matter overall * * *." For the individual charges, specific penalties, i. e., fines, were imposed. However, the "overall" conduct of plaintiffs is not such as legally to support a suspension. The picketing and the appeals are inseparable parts of this overall conduct, and since suspension based in part, at least, on those actions is illegal, the suspension cannot stand. However, because plaintiffs have failed to pay non-attendance fines, they are not entitled to be restored to good standing. They are entitled only to have the suspension lifted and to enjoy whatever concomitant rights they have as unsuspended members.

### Conclusions of Law

1. The court has jurisdiction of the parties and the subject matter.

2. The fining of plaintiffs for picketing and for appealing to the International Union and the Department of Labor are in violation of the Labor-Management Reporting and Disclosure Act of 1959, §§ 411(a) (2) and 529. The suspension of plaintiffs, being based in part on these same actions of plaintiffs, are also in violation of the Act.

3. The plaintiffs have shown they will be irreparably harmed if they are not permitted to participate in future votes dealing with the new contract negotiations or possible strike vote in August or September of 1963. These rights cannot be compensated in money damages.

4. The plaintiffs have demonstrated that there is reasonable probability they will succeed in this action.

5. Defendants are enjoined from suspending the plaintiffs on the basis of their picketing or appeals to the International Union and the Department of Labor.

### ORDER

AND NOW, August 27, 1963, after hearing had in the above matter, IT IS ORDERED that a preliminary injunction issue upon security being entered by the plaintiffs in the sum of $1,000.00.

IT IS FURTHER ORDERED that upon the entry of such security, until further hearing and Order of the Court, defendants vacate plaintiffs' suspension from defendant Union and that plaintiffs be reinstated as members of the American Bakery & Confectionery Workers International Union, AFL–CIO, Local 492.