Franklin NIX

v.

**FULTON LODGE NO. 2 OF the INTER-
NATIONAL ASSOCIATION OF MA-
CHINISTS AND AEROSPACE WORK-
ERS, and Davis L. Miller as President
of Fulton Lodge No. 2 of the Interna-
tional Association of Machinists and
Aerospace Workers.**

No. 10463.

United States District Court
N. D. Georgia,
Atlanta Division.

Jan. 9, 1967.

William G. McRae, Atlanta, Ga., for plaintiff.

J. R. Goldthwaite, Jr., Atlanta, Ga., for defendants.

———◆———

SIDNEY O. SMITH, Jr., District Judge.

This is a suit brought by plaintiff, Franklin Nix ("Nix") against Fulton Lodge No. 2 of the International Association of Machinists and Aerospace Workers (the "local union"), of which he is a member, under the Labor-Management Reporting and Disclosure Act. 29 U.S. C.A. § 401 et seq. Basically, he seeks injunctive relief against his expulsion for an alleged exercise of his rights of free speech under the act. 29 U.S.C.A. § 411 (a) (2).[1] He likewise seeks damages and further injunctive relief against the dissemination by defendant and others of the facts surrounding his expulsion. 29 U.S.C.A. § 412. Upon the filing by Nix of his original petition, the court issued an ex parte restraining order which was, on subsequent hearing, dissolved as premature as it issued after the filing of charges against petitioner and his hearing before the Trial Committee, but prior to any report to the local union or expulsion. Subsequently, the petition was amended showing actual expulsion. The court issued another ex parte restraining order which was, on subsequent hearing, continued in force until the full hearing on the preliminary injunction by the court. At the full hearing, it was stipulated by the parties that the court's action would be final on the injunctive question and constitute a complete trial on the issues of both temporary and permanent relief, other than the question of damages.

There is little dispute about the facts. The record in the case consists of numerous documentary exhibits adduced on trial, the authenticity of which is agreed upon by both parties.[2] All of such evi-

1. Which reads:

Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

2. Plaintiff's exhibits A, B, C & D concern themselves primarily with the charges and

dence is adopted as the court's findings of fact in this case.

In brief, Nix is a former professional journalist. In 1955 he applied for employment as a press-representative of the International Association of Machinists and Aerospace Workers. The Grand Lodge hired him in this capacity as a "staff employee." The Grand Lodge is made up of members of the union and is governed by a President, eight Vice-Presidents, and a Secretary-Treasurer, who together constitute the executive council of the Union and operate it between conventions of the membership at large. The membership is further organized into Local Lodges and District Lodges, normally by occupational groups, such as railroad workers, airline workers, etc. Each International vice-president is assigned a regional responsibility. Working with him under the executive council are various full-time staff employees and representatives in each region, whose responsibility lies in the financial, organizational, contractual negotiation, publicity, etc. supervision of the local and district lodges within the region. Membership in the union is not required for the employment given to Nix but is normally granted to all staff representatives.

Earlier, beginning in mid-1965, Nix undertook to organize the staff representatives into a union known as the "IAM Representatives Association." This campaign was successful in that the sub-union was organized and certified by the National Labor Relations Board as the authorized bargaining agent for certain employees of the national field staff to bargain with the Grand Lodge with respect to wages, hours, and working conditions of such employees.

In the course of the organizational campaign Nix issued two letters or bulletins to prospective members of the sub-union exhorting their vote against the Grand Lodge in the forthcoming election.[3] In such letters, inter alia, Nix stated:

"Bob Quick, general chairman of United Airlines (then Capital) didn't hesitate to picket Grand Lodge when he thought Hayes ordered him to trample on the rights of his members. You know what happened? They broke their necks getting down to settle things with Bob and get him off that sidewalk. Would Bob do it again? Ask him?" (6/23/66).

The other letter, I'm informed, is addressed to me, but sent to you by Grand Lodge Headquarters on the Grand Lodge postage meter with a date of June 29th and signed by Bob Quick. In it Bob, who was recently helped out by the IP and Plato, reportedly denies that he ever picketed or threatened to picket Grand Lodge, or ever had any differences with Hayes. I would be the first to say that I was not there. But General Vice-President McGlon, who told staff members about it, was not campaigning against a union at the time and had no reason, so far as I know, to deceive people about Bob's Capital differences with Grand Lodge. I kidded him about it some time later in Miami, and he didn't issue any corrections at that time." (7/2/66).

On the basis of such letters, Quick (a District Lodge President in California) filed charges of misconduct against Nix under Article L, Section 7 of the International Constitution. This Section provides for the filing of charges by one member of the International Union, regardless of his local or district affiliation, against another member of the Grand Lodge with the President of the latter's local. Thus the vehicle adopted by the Grand Lodge for trial is the local

trial procedure against Nix by the local union.

Defendant's Exhibits 1 through 14 consist of the by-laws, the trial procedure, correspondence between the principals, copies of NLRB charges pending by Nix against the union, various bulletins published by Nix during his membership in the union, and the deposition of Nix taken by the parties.

3. These are letters signed by Nix dated June 23, 1966, and July 2, 1966, shown as part of Exhibit A.

union and in such capacity the local union acts for the Grand Lodge. (See Exhibit 1 and Exhibit D).

The trial committee was duly formed and a hearing followed in accordance with the international constitution and by-laws. On November 10, 1966, the trial committee reported its verdict of "guilty" and recommended expulsion. In the finding and in the expulsion, the local union concurred by secret written ballot, all as provided by the constitution. Section 14 and Section 15 provide for internal appeals to the International President and to the Executive Council, and to the General Convention. These appeals the plaintiff here disclaims, aserting his right to proceed in district court under 29 U.S.C.A. § 411 at this point. It is agreed that all statements made by Nix, on which his trial and expulsion are based, were made by him in the course of organizing the IAM Representatives Association, or the sub-union.

Just prior to the filing of these charges, Nix was discharged as a paid staff employee by the International President Siemiller. Nix immediately filed unfair labor practice charges against the Grand Lodge arising out of his discharge, charging that the Grand Lodge discriminated in regard to the terms and conditions of employment "in order to discourage membership in a labor organization." Such charges are presently pending before the NLRB.

In essence, the defendant contends that this action is barred:

(a) Because Nix's publications were not an exercise of free speech covered by the Act in that they concerned extra-union matters rather than internal union matters.

(b) Because the complaints herein are preempted by the authority already vested in the National Labor Relations Board.

(c) Because petitioner has not exhausted his internal remedies of appeal as provided by 29 U.S.C.A. § 411(a) (4).

Heretofore, the plaintiff has filed a motion for judgment on the pleadings and the defendant a motion to dismiss, both of which would be satisfied by a ruling on the merits. In addition, the defendant moves to dismiss for failure to join the Grand Lodge as a party. The plaintiff denies the necessity of the joinder, but countermoves to join the International Union as a party defendant. Further, the defendant has filed a motion to strike, directed primarily against plaintiff's claim for punitive damages.

## CONCLUSIONS

■ At the outset, it is clear to the court that the problem here is not concerned with Nix's employment or any claim for damages arising from his discharge. Such matter is properly before the NLRB. Plaintiff's case must rest on his rights as a member of the defendant union in order to invoke the jurisdiction of the court under the so-called Landrum-Griffin Act. See Seeley v. Brotherhood of Painters, Decorators, etc., 308 F.2d 52 (5th Cir. 1962). Legally then, the complaint must stand or fall on petitioner's exercise of some right of free speech under 29 U.S.C.A. § 411(a) (2); a violation of that right by the defendants; and damage to his *membership status* in the union. The eventual discipline complained of was expulsion from membership in the International Union by the trial and vote of the local union. Thus the damage to membership is present.

■ (a) Of course unions are not prohibited from discharging persons from membership. There are countless reasons, i. e. non-payment of dues, over which the courts rightly have no control. It is only when the expulsion results from an exercise of the "equal rights" or "freedom of speech and assembly" provisions of the "Bill of Rights" as dictated by congressional policy in the Act that the courts should, or ought, to intervene.

Here, the union's primary position is that the utterances here are not within the purview of the act, but are "extra-union" and in the area reserved by Congress to the internal decision of the union itself.

■ It is apparent to the court that the free speech provisions of the Act are extremely broad. It has been stated that this right of freedom of speech is absolute and is limited only by the two congressional exceptions of reserving to the unions power to enforce reasonable rules (1) as to the responsibility of members toward the organization as an institution and (2) to prevent interference with the union's contractual and legal obligations. 29 U.S.C.A. § 411(a) (2); Salzhandler v. Caputo, 316 F.2d 445 (2nd Cir. 1963), cert. den. 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275. It has followed that a liberal interpretation has been given the provisions by the courts and as long as the exercise of speech is related to union activities it has been held sufficient to satisfy this threshold requirement for judicial action. Thus, the truth or falsity of the statement is immaterial, even though it may amount to malicious vilification. Cole v. Hall, 339 F.2d 881 (2nd Cir. 1965). It may even constitute libel or slander. Stark v. Twin City Carpenters District Council, D.C., 219 F.Supp. 528. Nor is it limited to freedom of expression among union members, but protects union members from discipline for public utterances outside the union hall. Graham v. Soloner, 220 F.Supp. 711 (E. D.Pa.1963). Also, it is a right which cannot be contracted away or legislated against within the union. International Bro. of Boilermakers, etc. v. Rafferty, 348 F.2d 307 (9th Cir. 1965).

Here, the union contends that the statements made, since they were directed toward an individual member in the course of organizing another union, did not concern the internal affairs of this defendant union. To so hold would certainly be a strained conclusion. There is no showing here by defendant that the statements fall within either of the two statutory exceptions. On the contrary, the overwhelming evidence is that the statements in question were only a part of a vast activity which is encouraged by Congress. The precise statements must be taken in context. It would destroy the rights granted to permit a union to extract a short statement from the whole, discipline on that statement alone, and later contend that the words therein are the only relevant evidence on the question. Apparently, the defendant seeks to do so here. An examination of Exhibit 11, which contains some twenty mailings put out by Nix in the organizational campaign, from which only seven sentences were made the basis of charges, clearly shows that the specific words were only part of the overall attempt to secure a favorable vote for the sub-union against the Grand Lodge.

■■ "The clear intent of Congress in enacting [the Labor-Management Reporting and Disclosure Act] was to prevent union officials from using their disciplinary powers to silence criticism and punish those who dare to question and complain." Graham v. Soloner, supra. The basic concern of the statute protecting union member's right to free speech is not in the precise words said, but rather what was being talked about. If the underlying topic of conversation concerns union affairs, then arguments, questions or accusations relating thereto are protected. Nor need they be carefully documented. Stark v. Twin City Carpenters District Council, 219 F.Supp. 528(4, 5) (D.Minn.1963). What more could concern the affairs of the parent union than that its employees were seeking to organize themselves?

It is thus concluded that statements made in the course of an organizational campaign amongst union employees are clearly protected by the Act. Specifically, it is concluded that the statements here, taken in context, are not within any exception provided by law and consequently afford the factual basis necessary for a suit in district court under the Act. 29 U.S.C.A. § 412.

(b) Secondly, the defendant here contends that the relief sought is preempted by the NLRB under the National Labor Relations Act and that the charges pending there now prohibit relief in the court.

■■ It is argued that the NLRB could under proper circumstances restore a person to union membership provided

such membership is a prerequisite to re-employment. Cf. Office Employees Int'l Union, Local No. 11, etc. v. NLRB, 353 U.S. 313, 77 S.Ct. 799, 1 L.Ed.2d 846, reh. den. 354 U.S. 928, 77 S.Ct. 1375, 1 L.Ed.2d 1441 (1957); Roberts v. NLRB, 121 U.S.App.D.C., 297, 350 F.2d 427 (1965). Inasmuch as it is contended here by defendant and concluded by the court that membership is not a prerequisite to a press representative's employment, it is apparent that the relief sought, i. e. reinstatement, would not be afforded by the N. L. R. B. Nor, of course, could the particular damages sought be awarded there. The general argument that the relief sought here is preempted by the N. L. R. B. is best resolved by Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, at 922, 923 (4th Cir. 1963) wherein it is stated: "The fact that the Act preserves to union members all remedies 'under any State or Federal law or before any court or tribunal' [29 U.S.C.A. § 413] * * only means that the new federal protection was superimposed on protection already available in other forums, 'reinforcing and not supplanting it.' Summers, 'The Law of Union Discipline: What the Courts Do in Fact,' 70 Yale L.J. 175, 176 (1960). This does not mean that the District Court must abstain from exercising its jurisdiction under section 102 [29 U.S.C.A. § 412] when elements of the matter at issue are arguably subject to the Labor Board's jurisdiction. Congress did not intend that before securing the rights it made enforceable in federal courts, individuals should wait for the Labor Board to pass upon such matters as might also be within its competence. (Citations)." See also, Grand Lodge of Int'l Ass'n of Machinists v. King, 355 F.2d 340, 347 (9th Cir. 1964) cert. den. 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334; Rekant v. Shochtay-Gasos Union Local No. 446, 320 F.2d 271, 274 (3rd Cir. 1963). Cf. International Assn. of Machinists v. Gonzales, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018 (1958).

■ (c) Finally, on the main issue is the question of exhaustion of internal remedies. On its face, 29 U.S.C.A. § 411 (a) (4), providing "That any such [union] member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof", appears to be absolute. However, for a variety of reasons—economic, futility, fairness, delay, etc.—the courts have interpreted the provision as permissive and not absolute. Quite early, such provisions were engrafted with a high ratio of exceptions, up to 80%. Summers, supra, 70 Yale L.J. 175 at 207–211 (1960). The problem now is to find instances where strict compliance was required by the courts amid the plethora of decisions admitting an exception for one reason or another.

■ Since the now landmark case of Detroy v. American Guild of Variety Artists, 286 F.2d 75 (2 Cir. 1961), determination must be made on the state of facts in each particular case. Such a standard imposes considerable difficulty here. The petitioner has confidently waived his rights of internal appeal and stands now on the tenuous preposition that such procedures are unnecessary. A safer course might have been to ask for temporary reinstatement pending internal appeals as was done in the early state case of Sherrioff v. Schimel, 28 L.R.R.M. 2377 (N.Y.Sup.Ct.1951). However, here the petitioner deems any appeal as unnecessary. This is based primarily on a conclusion that Quick, the accuser here, was acting under the supervision and as agent for Siemiller, the international president; that Siemiller was thus in fact the accuser; and that an appeal to him would be futile. A bare claim or allegation of futility is, of course, insufficient to escape the statute. Mendez v. District Council for Ports of Puerto Rico, 208 F.Supp. 917 (D.P.R.1962); Smith v. General Truck Drivers, etc., Union Local, 181 F.Supp. 14 (S.D.Cal. 1960). No evidence is found here to link the actual filing of charges to Siemiller. Such conclusion could only be reached by

the strongest of innuendos from the record before the court and this particular contention is rejected.

■ However, there is considerable evidence of hostility toward Nix by the international president. A cursory reading of Exhibit 13, containing correspondence between the two culminating in Nix's discharge reveals cross-accusations between the two in which Siemiller stated that Nix's statements were "not well received," that he had "jumped to conclusions, made erroneous statements and substituted fiction for fact." Of even more significance is Exhibit 12, which contains the counter-organizational bulletins published by Siemiller. In one of March 8, 1966, Nix was severely criticized for his tactics and the staff representatives were informed for the purposes "(1) To make you aware of opposition that you will have to meet as you represent our International Union in your organizing campaigns and to give you an opportunity to find an answer to combat this type of a situation, and (2) to show you the type and kind of an individual that Franklin Nix has demonstarted that he is and who is now trying to represent you as the Recording Secretary of an IAM Representatives Association." Another of June 28, 1966, reviews all of Nix's acts in the campaign, which were classified as "harassment and detrimental to the best interests of our overall International Union's progressive march forward," and concludes that "Nix has made many false statements in the material that he has sent you while conducting his organizing campaign." From the entire record, this court concludes that Siemiller has in fact prejudged Nix and agrees now that the statements in question were false. Thus, while the international president Siemiller is not the accuser here, he and the Executive Council do represent the "very officers against whom the complaints are directed" and, thus, the facts here come within the purview of a futile appeal for those reasons and accordingly unnecessary. Calagaz v. Calhoon, 309 F. 2d 248 (20) (5th Cir. 1962); Fingar v.

Seaboard Air Line Railroad Company, 277 F.2d 698 (5th Cir. 1960); Farowitz v. Associated Musicians of Greater New York, Local 802, 241 F.Supp. 895 (S.D. N.Y.1965). Compare Harris v. International Longshoremen's Asso., Local No. 1291, 321 F.2d 801 (3rd Cir. 1963).

Further, here the plaintiff claims unusual injury by virtue of the possible harm of publicity attendant to appeals being circulated amongst the membership including those he seeks to organize. This too is a factual circumstance which inclines the court to pretermit the requirement of internal appeal in this instance. All in all, in the exercise of discretion, the court holds that, under the facts of this case, the failure of plaintiff to exhaust existing rights of appeal to the International President and the Executive Council, is not a bar to the major relief sought. Farowitz v. Associated Musicians of Greater New York, 330 F.2d 999 (2d Cir. 1964); Simmons v. Avisco, Local 713, Textile Workers Union, 350 F.2d 1012 (4th Cir. 1965).

■ None of this is to say that Nix was right or wrong in what he said, or that Siemiller should or should not have replied. However, as seen, we are not concerned in these matters with truth or falsity. The point is that Nix cannot be disciplined for making the statements. Accordingly, he is entitled to an injunction against expulsion, restoring him to full membership.

■ There remain the problems raised by the various special motions. As seen, the expulsion was handled under the International Constitution and By-laws, which made the local union the agency for processing the charges. Under such circumstances, there is no hesitancy in concluding that the International Union is bound by these same procedures and the reinstatement ordered here is effective for Nix's membership in the Grand Lodge as well as the local lodge. This follows because Fulton Lodge No. 2 is merely the agency designated by the International. The expulsion is the act of the union as a whole and not some individual or some branch with-

in it. Such an association has no legal existence as an entity separate from its members and may be considered in the nature of a class action. See Calagaz v. Calhoon, 309 F.2d 248 (5th Cir. 1962). Accordingly, the Grand Lodge is considered bound in this action whether a formal party or not, and the motion to dismiss is denied. By and through the international constitution and by-laws, it is in effect in active concert and participation with the local.

Similarly, the act of Miller individually in processing the charges is but the act of the union as a whole and he has no personal liability in this capacity. Everything done by him was completely within the scope of his duties as local president and the complaint is directed—not at the administrative carrying out of the by-laws—but at the result. He is bound by the court's order the same as any other officer, but no more so. It is only when a union official acts outside his authority that personal liability may arise. Accordingly, the motion to dismiss as to the defendant Miller in an individual capacity is granted. While there are a few exceptions, the weight of authority appears to be against the granting of any punitive damages in a suit under this act. See McCraw v. United Assn. of Journeymen & App. of Plumbing, etc., 341 F.2d 705 (6th Cir. 1965); International Brotherhood of Boilermakers, etc. v. Rafferty, 348 F.2d 307 (9th Cir. 1965); Magelssen v. Local Union No. 518, Operative Plasterers', etc., 240 F.Supp. 259 (W.D.Mo.1965). And, the motion to strike the claim for punitive damages is also granted. A reading of the damage cases indicates that recovery is extremely limited. In this particular case, since Nix's salary claims are before the N. L. R. B. and unaffected by membership status, his claim for damages is even more limited. The determination of the damage claim is reserved for a future date.

It is concluded that the extent of the court's injunctive power is to prevent expulsion and to restrain the written publication of the Trial Committee's report, recommendation, or the action of the membership vote.

Relief is, therefore granted to the extent provided by the attached order and judgment.

It is so ordered.

## ORDER

The within and foregoing matter coming on before the court, now, after hearing evidence and argument of counsel and the parties having consented to a final trial on the question of equitable relief, and upon the filing by the court of written findings of fact and conclusions of law under Rule 52, F.R.Civ.P.,

It is considered, ordered, and adjudged

(1) That the court has jurisdiction of this case by virtue of 29 U.S.C.A. § 412.

(2) That defendant's expulsion from its membership was a violation of plaintiff's right of free speech and free expression of opinions under 29 U.S.C.A. § 411(a) (2);

(3) That plaintiff was within the right to sue protected by 29 U.S.C.A. § 411(a) (4).

(4) That plaintiff, having been unlawfully expelled from the union and denied the right of free speech guaranteed to him by the statute is entitled to injunctive relief.

Accordingly, the defendant union and the International Association of Machinists and Aerospace Workers are hereby ordered to reinstate Franklin Nix to membership forthwith and to expunge from its minutes and records and dismiss all charges against him, all proceedings of the Trial Committee or its recommendations, and all votes taken thereon. Defendant is further enjoined from the written publication or release of any of such records to any other member or officer of the International Association of Machinists and Aerospace Workers, or to any private party.

The defendant, its officers, agents, servants and members, are further enjoined, both temporarily and permanently, from interfering directly or indirectly with the plaintiff in his right to speak,

publish, or disseminate his views on union matters.

The restraining order previously issued by the court is superseded and the bond therefor required under Rule 65(c), F.R.Civ.P. is hereby exonerated.

It is so ordered.