Opinion
SMITH, J.*
This is an action by the representative of a union to collect a fine. Defendant was fined for writing and mailing a letter, very critical of the union, to his employer and the press.
The union had been on strike. The November issue of the union newspaper reported that the strike was settled and that a contract had been ratified and signed. In fact, the contract was not signed until later, but this was not known to defendant. The critical letter was written and mailed in December after the defendant had read the newspaper article, but before the actual signing of the contract.
As part of a preliminary strike settlement agreement executed in October, the union agreed not to take any punitive or disciplinary action against union members for events “occurring during or in relation” to the strike.
*Supp. 3 Defendant’s principal defense is that his letter was protected by section 101, subdivision (a)(2) of the Labor Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 411), reading in part as follows: ‘‘Freedom of Speech and Assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions . . . Provided., That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.”
Under the proviso, the defendant may be liable for having exercised his freedom of speech if either. (1) he violated his responsibility to the union “as an institution” or (2) the letter “interfered” with the performance of the union’s “legal or contractual obligations.”
Several things have been established by prior decisions: First, freedom of speech of the union member is protected outside of the union halls as well as within. Deacon v. International Union of Operating Engineers, Local No. 12 (C.D. Cal. 1967) 273 F.Supp. 169 at pp. 172 to 173; Nix v. Fulton Lodge No. 2 of Inti. Assn, of Machinists & Aerospace Workers (N.D. Ga. 1967) 262 F.Supp. 1000 at p. 1005; Graham v. Soloner (E.D. Pa. 1963) 220 F.Supp. 711 at p. 714. Second, no matter how critical of the union the statement may be, it is protected if it merely reflects on the officers of the union or the management of the union or the policies or conduct or acts of the union as distinguished from the union “as an institution.” As an example of what is meant by attacking the union “as an institution” see Sawyers v. Grand Lodge Inti. Assn, of Machinists (E.D. Md. 1967) 279 F.Supp. 747 where advocating “dual unionism” was held to be improper. Also see Price v. National Labor Relations Board (9th Cir. 1967) 373 F.2d 443. The latter case involves actively advocating decertifying a union. While the problem arose under a different statute, the reasoning in the case is helpful. On the other hand, attacks on the union, no matter how vicious and no matter how false, if primarily directed towards the leadership of the union or to union policies and conduct and actions of the union resulting from such leadership, have been held not to be against the union “as an institution.” (Salzhandler v. Caputo (2d Cir. 1963) 316 F.2d 445; Giordani v. Upholsterers Inti. Union of North America (2d Cir. 1968) 403 F.2d 85; Farowitz v. Associated Musicians of Greater New York (2d Cir. 1964) 330 F.2d 999; Grand Lodge of Inti. Assn, of Machinists v. King (9th Cir. 1964) 335 F.2d 340; Cole v. Hall (2d Cir. 1965) 339 F.2d 881; International Brotherhood of Boilermakers etc. & Helpers v. Rafferty (9th Cir. 1965) 348 F.2d 307; Gartner v. Soloner (7th *Supp. 4 Cir. 1963) 220 F.Supp. 115; Nix v. Fulton Lodge No. 2 of Intl. Assn. of Machinists & Aerospace Workers (N.D. Ga. 1967) 262 F.Supp. 1000.)
Respondent’s criticism of the latter line of cases is that most of them involve statements made within the union. The distinction is of course obvious and is frequently important in connection with other problems, but here it is utterly without merit. The statute preserves to laborers freedom of speech. (Note the words after the semicolon and the interpretation of such words and semicolon as explained in the Deacon case.) Such a right is an empty shell unless it protects the laborer who dissents from the views of the majority. Neither the statutory protection of the right nor the proviso limiting that right contains any words making the distinction urged by respondent. Such distinction is repudiated by the cases. See the Deacon, Nix, and Graham cases, supra. Such repudiation is based both on the language of the statute and the public policy favoring freedom of speech. Furthermore, such asserted distinction is irrelevant to the issue whether the attack is or is not on the union “as an institution.”
This leaves for our consideration the question whether the letter “interfered” with any “legal or contractual obligations” of the union. Even though the contract had not been signed, no evidence whatsoever was introduced to show that the letter interfered in any way with whatever still remained to be done.
The only way that the finding of interference can be supported is by relying on the continuing obligation of the union to represent the membership 365 days of the year and by holding that criticism of the union at any time weakens the bargaining position of the union and thus, presumably, interferes. This is essentially the position taken by the trial judge. But if you adopt that view, there is nothing left to the statute. It affords protection except for 365 days of the year. Such a construction is untenable. On the other hand, if you abandon that approach, there is no basis for the finding. There was no evidence of interference in fact.
For the foregoing reasons, the judgment must be reversed because the letter sent to the press and the letter sent to the employer were both protected. Thus, the following brief comments are all that need be said with respect to remaining arguments of the parties.
(1) Respondent argued that if it was improper to send the letter to the employer the judgment should be sustained, even if it was proper to send the letter to the press. This is contrary to the reasoning of Street v. New York (1969) 394 U.S. 576 [22 L.Ed.2d 572, 89 S.Ct. 1354], and cases therein cited, and we would have ruled as above even if only one letter had been protected.
*Supp. 5 (2) Appellant argued, primarily in his closing brief, that (a) no “rules” had been adopted as required in the proviso, and (b) even if the union constitutional provision could be considered a rule, it was not a reasonable rule, because of vagueness and uncertainty. This argument came too late to be properly answered by respondent and we express no views thereon. We have ignored the wording of the “rules” throughout this opinion. This cannot prejudice respondent because, while they could be less restrictive than the proviso in the statute, they would be invalid if more restrictive.
(3) Appellant argued that respondent is estopped because of the union’s misrepresentation that the contract was already signed. Under our analysis, we do not reach this problem.
(4) Appellant argued that he was released by the preliminary strike settlement agreement. Neither do we reach this problem under our analysis.
Judgment is reversed with directions to enter judgment for defendant. Appellant to recover his costs on appeal.
Whyte, P. J., and Wong, J., concurred.

Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.