**Robert A. GARTNER**

v.

**Jack SOLONER, President and Robert C. Brennan, Secretary-Treasurer, and American Bakery & Confectionary Workers International Union, AFL–CIO, Local 492.**

**Civ. A. No. 33707.**

United States District Court
E. D. Pennsylvania.

July 3, 1963.

Hamilton & Darmopray, Perrin C. Hamilton, Philadelphia, Pa., for plaintiff.

. Edward Davis, Philadelphia, Pa., for defendant.

WOOD, District Judge.

This is an action brought under the provisions of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. §§ 401–531. More specifically, the plaintiff seeks to enjoin the defendants' actions in fining and suspending him from membership in the defendant union for a period of one year.

It is the plaintiff's contention that the fines and suspension are in violation of § 411(a) (2), which protects a labor union member's rights to freedom of speech and assembly.[1]

1. This sub-section reads as follows:
 "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of the meetings: *Provided* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonble rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligation."

*Findings of Fact*

1. The plaintiff is employed as a maintenance worker by the National Biscuit Company (Nabisco) in the City of Philadelphia.

2. The defendants are the officers of Local 492, American Bakery & Confectionary Workers International Union, AFL-CIO, which is the Union at Nabisco.

3. Until March 8, 1963, the date of his suspension, the plaintiff was a member in good standing of Local 492.

4. In November of 1961, local elections were to take place and the plaintiff, who is a "spokesman" or "leader" of a minority group within the Local Union, was a candidate for trustee.

5. Prior to the election, the defendants, Soloner and Brennan, informed the membership that unless a member was "paid-up" both in fines and dues, he would not be permitted to vote in the pending election.

6. On November 18, 1961, some four days prior to the election, the plaintiff, who was a paid-up member and eligible to vote, led a group of ineligible members to the vicinity of the offices of the Local and they proceeded to picket the offices of the Local for *30 minutes*.

7. The banners carried by the pickets bore the legend: "Brennan and Soloner Dictators of Philadelphia." These signs were addressed to the Secretary of Labor and the United States Attorney General.

8. The plaintiff was defeated in the election for the office of trustee.

9. He then began writing a series of letters to the defendant officers, requesting an "appeal" of the election and alleging that members of the Local were illegally deprived of voting rights. This "appeal" was held to be without merit by the Local officers.

10. Subsequently, the plaintiff filed a self-styled appeal to the International Union's Secretary-Treasurer in Washington, D. C., which initiated an investigation of the matter.

11. The appeal was denied by the International because the plaintiff failed to follow the Union Constitution, which requires specific charges to be made against the accused party.

12. After this denial, the plaintiff and his followers contacted the Department of Labor and requested an investigation.

13. The Bureau of Labor-Management Reports conducted an investigation and concluded that no violation occurred which may have affected the outcome of the election.

14. In December of 1962, the defendant Brennan, in his individual capacity as a union member, addressed a letter to himself in his official capacity as secretary-treasurer of the Local and made charges against the plaintiff.

15. These charges alleged that the plaintiff engaged in unauthorized picketing of the Local Union headquarters and that he displayed signs which contained disparaging remarks of specific officers of the Local. Plaintiff was also charged with bad faith in taking his appeal to the International Union and in seeking the assistance of the Department of Labor. Another charge concerned the plaintiff's alleged removal of a communication from the Local Union posted on the bulletin board at Nabisco.

16. The plaintiff was found guilty of unauthorized picketing and fined $50.00. He was also found guilty of bad faith in proceeding to the International Union and the Department of Labor with his appeals and fined $25.00. For both of these offenses, he was suspended from the Union for a period of one year. He was found not guilty of the remaining charge.

17. The letter notifying the plaintiff of this decision was dated March 7, 1963, and it advised the plaintiff regarding appellate procedures according to Article XX, § 4, of the Constitution of the International Union.

18. This Article in § 4(a) requires that the appeal be filed with the International Union within 15 days after receipt of the decision appealed from and § 4(c) requires compliance with the judgment

appealed from before the appeal is taken, unless the judgment is stayed by the International President for good cause.

19. The plaintiff filed his appeal by letter dated March 18, 1963, but he refused to pay the fines and his appeal was denied because of his non-compliance with § 4(c) on May 20, 1963.

20. The instant civil action was filed on June 24, 1963, wherein the plaintiff claims irreparable harm will result to him because:

(a) he will be denied his voice in new contract negotiations due to begin in July of 1963, and

(b) he will be denied his right to vote on the result of the new contract negotiations, and

(c) he will be denied his right to participate in the possible strike vote should the contract negotiations fail.

21. A union meeting is scheduled for July 5, 1963, and a resolution is to be presented to the membership to determine whether or not the Union will enter into joint negotiations for a new contract.

22. The plaintiff, being a leader of the minority group, has an important voice in such a meeting and any future negotiations.

## Discussion

■ This litigation is the result of the plaintiff's militancy in opposing what he considers the "dictatorial" leadership of his Local Union. The testimony and affidavit submitted by the defendants contradict the plaintiff in this regard. However, while the plaintiff may be mistaken in his criticism of the leadership of the Local, he still has the right to express his opinion, untrammeled by Union sanctions and penalties. This right is guaranteed him by § 411(a) (2) (see note 1) and is limited only insofar as a member's conduct interferes with the performance of the Union's legal or contractual obligations. The testimony and exhibits in this matter fail to show that the plaintiff's activities interfered in any way with the Union's obligations. If anything, the Union has received praise from the investigating parties and found to be in good administrative order.

■ The defendants have made a motion to dismiss, contending that this Court does not have jurisdiction because the plaintiff has not exhausted his intra-union remedies as required by § 412 of L.M.R.D.A. of 1959. Also, it is argued that no violation of the L.M.R.D.A. of 1959 has been made out by the Complaint to warrant this Court's jurisdiction.

The plaintiff has taken his Union appeal and has received a final decision from the International by its denial of relief, because he failed to comply with the judgment as rendered by the Local. He cannot take a new appeal in this matter since the Constitution requires compliance with the judgment appealed from *before* the appeal is taken and *within* 15 days of the receipt of the judgment. The plaintiff was notified in March of 1963 of the adverse decision of the Local. Therefore, even if he complied with the judgment by paying his fines, his new appeal (if allowable at all) would be filed far beyond the mandatory 15-day period of Article XX, § 4(a), which contains no provision for abating this time requirement.[2] The plaintiff has exhausted his internal Union remedies

2. Article XX, § 4(a), Appeals, reads as follows:

"Either the charged or charging party may take an appeal in accordance with this article. The appeal must be filed with the International Secretary-Treasurer within fifteen days after the receipt of the decision being appealed, shall be in writing and specify the portions of the decision being appealed and the reasons for the appeal."

§ 4(c). "The judgment being appealed must be complied with before the filing of the appeal, unless the International President, for unusually good cause shown, shall specifically and in writing stay the enforcement of the judgment in part or in whole. Absent such stay, the judgment shall stand and remain in full force and effect unless and until reversed by the appellate body."

since the next convention is more than a year away (Article XX, § 4(b) of the Constitution).

 The plaintiff has alleged in his Complaint sufficient facts to state a claim under the L.M.R.D.A. of 1959, insofar as he avers facts which plead a violation of § 411(a) (2). Accordingly, the defendants' motion to dismiss is denied.

 The Labor-Management Reporting and Disclosure Act of 1959, popularly called the Landrum-Griffin Act, 29 U.S.C.A. §§ 401–531, was intended to protect democratic processes within Unions. The plaintiff was entitled to express his opinions by advertising his beliefs by means of picketing with signs bearing his criticism of the Local's officers. The mere fact that he failed to acquiesce in the Local's decision and had the temerity to contact the International Union and the Secretary of Labor are not evidence of "bad faith" acts on his part. And such "bad faith" is not proven merely by the adverse determinations of the International Union and the Secretary of Labor.

> "Quite the contrary; it would seem clearly in the interest of proper and honest management of union affairs to permit members to question the manner in which the union's officials handle the union's funds and how they treat the union's members." Salzhandler v. Caputo, et al., 316 F.2d 445, 450 (2 Cir. 1963).

The plaintiff represents a small dissenting group within the Local who may provide the checks and balances on the operations of this Local which are needed in any well run democratic organization. Sensitivity to personal criticism is a luxury not available to any holder of elective office, whether he be in public or private life.

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter.

2. The suspension and fining of the plaintiff are in violation of the L.M.R.D.A. of 1959, §§ 411(a) (2) and 529.

 3. The plaintiff has shown he will be irreparably harmed if he is not permitted to vote on the resolution to be proposed on July 5, 1963, and to participate in future votes dealing with the new contract negotiations or possible strike vote in August or September of 1963. These rights cannot be compensated in money damages.

4. The plaintiff has demonstrated that there is reasonable probability he will succeed in this action.

5. The defendants are enjoined from depriving the plaintiff of his right to attend and participate in Union meetings or otherwise deprive the plaintiff of his rights as a member in good standing of Local 492, American Bakery & Confectionary Workers, International Union, AFL–CIO.

### ORDER

AND NOW, this 3rd day of July, 1963, after hearing had in the above matter, IT IS ORDERED AND DECREED that a Preliminary Injunction issue upon security being entered by the plaintiff in the sum of $1000.00.

Upon the entry of such security, the defendants are Ordered, until further hearing and Order of the Court:

(a) that defendants vacate plaintiff's suspension from defendant Union and that plaintiff be reinstated as a member in good standing of the American Bakery & Confectionary Workers International Union, AFL–CIO, Local 492;

(b) that defendants take no action pending final disposition of this case that would in any way deprive plaintiff of his right to attend and participate in meetings of the general membership of Local 492 or otherwise deprive plaintiff of his rights as a member in good standing of Local 492 of the American Bakery & Confectionary Workers International Union, AFL–CIO.