Melvin PACKER and William Cherilla, Plaintiffs,

v.

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL NO. 249, a Labor Organization, et al., Defendants.

Civ. A. No. 76–1181.

United States District Court, W. D. Pennsylvania.

March 9, 1977.

**146**

Paul D. Boas, Ronald A. Berlin, Pittsburgh, Pa., for plaintiffs.

Joseph J. Pass, Jr., Jubelirer, McKay, Pass & Intrieri, Pittsburgh, Pa., for defendants.

## MEMORANDUM

TEITELBAUM, District Judge.

This is an action for injunctive relief brought by plaintiffs Melvin Packer and William Cherilla under Sections 101, 102 and 609 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. §§ 411, 412 and 529.

Plaintiffs are members in good standing of defendant Local 249 of the International Brotherhood of Teamsters; they are also active members of Teamsters for a Democratic Union (TDU), a dissident rank and file Teamster organization which has been sharply critical of the Union leadership both on a national and local level.

Packer and Cherilla currently are the focus of internal union disciplinary proceedings commenced pursuant to the filing of certain charges against them by one David Scrapchansky, a Union member named as an individual defendant herein. The essence of these charges is that plaintiffs violated the Union's International Constitution and By-Laws by making certain statements to local news media representatives on April 1, 1976, at the height of a nationwide freight strike called after expiration of the National Master Freight Agreement the preceding month.

It appears that Scrapchansky's employer was one of those freight companies which had signed an interim agreement with a Teamster Local (here, Local 249) in order to avoid the strike. The charges preferred by Scrapchansky allege that plaintiffs' public and widely-disseminated statements of April 1 impermissibly operated to interfere with the valid collective bargaining agreement between his employer and Teamster Local 249 by causing employees covered by the contract to disregard their express no-strike obligations thereunder.[1]

These charges were referred to a Union trial board constituted pursuant to the Teamster's International Constitution and By-Laws, scheduled for hearing and eventually heard. In compliance with this Court's request, the Union has refrained from issu-

---

1. Cherilla: ". . . perishables that are on the road would be permitted to unload.

"The only way this strike can be successful is if all companies are shut down, and they are refused permission to run on the highways. Our only strength is our labor solidarity and collective action to keep the companies shut down. Teamsters for a Decent Contract is calling for all Teamsters to hit the roads, terminals, and tonight to make sure there will be no freight moving by tomorrow.

Conroy: "Last night was a free night. Tonight somebody's gonna get it."
The above text of the statements in question was broadcast on KDKA–TV news.
Plaintiff Packer was present, but silent at the news conference during which the foregoing statements were made. Conroy, quoted last above, appeared at the news conference with Packer and Cherilla, but was not named in the charges filed by Scrapchansky and is not a party to the instant suit.

ing any decision or imposing any possible punishment with respect to this matter pending resolution of the federal lawsuit *sub judice.*

It is thus apparent from the posture of this case that plaintiffs do not ask the Court to review an adverse decision of the Union's trial board or to enjoin the imposition of any sanctions that might flow therefrom. Rather, plaintiffs ask that the Court, *inter alia,* enjoin the internal trial board proceedings themselves, and thereby judicially preclude the Union from hearing and determining the charges filed against Packer and Cherilla.

Plaintiffs argue entitlement to such injunctive relief on three grounds: first, that plaintiffs' public statements are patently protected by the free speech provisions of the Labor-Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(2), and therefore cannot constitute the basis of Union disciplinary proceedings; second, that procedural aspects of the internal proceedings involving plaintiffs offend those traditional concepts of due process embodied in 29 U.S.C. § 411(a)(5);[2] and third, that certain pertinent sections of the Union Constitution and By-Laws are "broad, vague, ill-defined and inconsistent" with 29 U.S.C. § 411, and are therefore without force or effect under 29 U.S.C. § 411(b).

I have examined these arguments carefully and with a necessary regard for the fact that a paramount right—that of free speech—is here in issue. It is incumbent upon me to state candidly that serious questions have been raised concerning both the Union's right to discipline plaintiffs for the subject statements and the procedural adequacy of this specific trial board hearing.[3] Such questions notwithstanding, however, I

have concluded that it would not be appropriate at this juncture for a federal court to intervene in this controversy. In my view, the instant lawsuit is premature; accordingly, we do not reach or determine the merits of plaintiffs' complaint.

Section 101(a)(4) of LMRDA, 29 U.S.C. § 411(a)(4), provides as follows:

"*Protection of the right to sue.*—No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization before instituting legal or administrative proceedings against such organizations or any officer thereof. . . .*" (Emphasis added.)

There has been no evidence presented in the instant case to indicate that plaintiffs have taken any action within the procedures available to them under the Union Constitution challenging the propriety or fairness of the internal hearing on the charges filed against them by Scrapchansky.

On the contrary, plaintiffs submit that although they have not attempted to obtain relief through the filing of a petition with their Union, they are not required to do so in this case because: (1) the exhaustion

---

**2.** 29 U.S.C. § 411(a)(5) provides: *Safeguards against improper disciplinary action.*—No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

**3.** Further discussion in this vein would be neither helpful nor appropriate. However, see generally *Semancik v. United Mine Workers of America Dist. # 5,* 466 F.2d 144 (3d Cir. 1972); *Falcone v. Dantinne,* 420 F.2d 1157 (3d Cir. 1969); *Pearl v. Tarantola,* 361 F.Supp. 288 (S.D.N.Y.1973).

clause contained in § 411(a)(4) is permissive rather than mandatory; (2) the exhaustion requirement should be waived in this case on grounds that the internal procedures available to plaintiffs are not reasonable, but wholly illusory; and (3) the exhaustion requirement is in any event not applicable herein for reason that it is explicitly limited to a four-month period and more than four months had elapsed between the time Scrapchansky filed his charges and plaintiffs commenced the instant lawsuit.

■ I do not agree. As to satisfaction of the exhaustion requirement in this case, I do not think it enough absent an adverse decision by the Union trial board that a hearing on Scrapchansky's charges was not held within the four-month period. If the exhaustion clause is to be at all meaningful it must be deemed to contemplate at least some affirmative action or complaint by plaintiffs within the intra-Union framework prior to resort to the federal courts. Here, all that has transpired is that plaintiffs have waited more than four months for a hearing on Scrapchansky's charges. No trial board decision has issued and plaintiffs have lodged no formal internal challenge to the hearing or its procedural aspects. In such circumstances, I do not consider that plaintiffs can be deemed to have satisfied the intent of the exhaustion clause.

■ I of course recognize that the exhaustion requirement in question is not rigid, and that the extent to which a union member will be required to exhaust internal procedures is a matter within the Court's discretion. *Semancik v. United Mine Workers of America, supra* at 151; *DeTroy v. American Guild of Variety Artists,* 286 F.2d 75 (2d Cir. 1961); *Pearl v. Tarantola, supra* at 292. I further recognize that waiver of the exhaustion requirement has been deemed particularly appropriate in factual circumstances akin to those alleged by plaintiffs herein. See *Semancik v. United Mine Workers of America, supra* at 150–151. But in the posture of this case, I am not persuaded that waiver should be embraced by the Court.

■ Given the testimony of Thomas Fagan, President of Teamsters Local 249, as to how pertinent provisions of the Union Constitution and By-Laws have been and will be applied, it is entirely possible that plaintiffs will be vindicated in this matter by the Union trial board. Moreover, while plaintiffs have demonstrated sharp differences in philosophy and opinion between themselves and the Union leadership, they have failed to make a compelling showing that the Scrapchansky hearing is a charade or that any internal action they might pursue would be useless or that intra-Union remedial procedures are unavailable or illusory. See *Falcone v. Dantinne, supra.* In the absence of such a showing, and in light of plaintiffs' failure to pursue any internal relief, I believe that the Union initially should be allowed to hear and determine the charges filed by Scrapchansky without judicial interference. In this regard, the Court is mindful of the proposition that Congress, in enacting LMRDA, did not intend to supplant union self-regulatory devices with wholesale judicial intervention, but rather sought to encourage the resolution of internal disputes within the framework of union government itself. See *Gartner v. Soloner,* 220 F.Supp. 115 (E.D. Pa.1962); see also, S.Rep. 187, 86th Cong., 1st Sess. 7 (1959). As Judge Rosenberg observed in *Webb v. Donaldson,* 214 F.Supp. 142, 144 (W.D.Pa.1962), ". . . among the most treasured rights of trade unions is the right to be permitted to resolve their own internal problems before a court accepts jurisdiction of such matters."

■ This Court heretofore has required that unions undertake the responsibility of controlling or disciplining members who disregard, or encourage others to disregard, valid no-strike clauses contained in collective bargaining agreements. See *Eazor Express v. Teamsters Local 249,* 376 F.Supp. 841 (W.D.Pa.1974), *modified* 520 F.2d 951 (3d Cir. 1975). The Union in this case is attempting to discharge that responsibility by conducting a hearing on charges of contractual interference filed against plaintiffs by another member. Plaintiffs are here

attempting to enjoin the operation of nothing less than the very mechanism by which the Union endeavors to meet the obligation that has been imposed upon it. In these circumstances, as distinguished from efforts to obtain review of an adverse trial board decision, enjoin the imposition of sanctions or obtain judicial relief where affirmative internal measures have proved fruitless, I do not believe intervention by a federal court is warranted or proper absent a compelling showing of extreme necessity. Plaintiffs have not made such a showing.

The injunctive relief sought by plaintiffs in this action will be denied without prejudice, and the Union will be permitted to complete its hearing on, and decide the merits of, the charges filed by Scrapchansky. In this, we trust that the Union will proceed with an acuity that the concept of union responsibility pertains in the instant LMRDA Bill of Rights context with no less force than in the context of the regulatory/disciplinary duty which it is endeavoring to discharge.

An appropriate Order will be entered in accordance with the foregoing memorandum.