James R. McCRAW

v.

UNITED ASSOCIATION OF JOURNEY-
MEN AND APPRENTICES OF the
PLUMBING AND PIPE FITTING IN-
DUSTRY OF the UNITED STATES
AND CANADA and Local Union No. 43
of the United Association.

Civ. A. No. 3830.

United States District Court
E. D. Tennessee, S. D.

Feb. 11, 1963.

Chambliss, Chambliss & Hodge, Chattanooga, Tenn., for plaintiff.

Martin F. O'Donoghue, Washington, D. C., for International.

S. Del Fuston, Chattanooga, Tenn., for Local No. 43.

FRANK W. WILSON, District Judge.

This is a suit for injunctive and other relief under Section 102 of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C.A. § 412) sometimes referred to as the Landrum-Griffin Act. The plaintiff charges the defendants, the United Association (hereinafter referred to as the "International Union") and its Local Union No. 43 (hereinafter referred to as the "Local Union"), with having wrongfully fined and suspended him in violation of Section 101 of the Act (29 U.S.C.A. § 411). The plaintiff also charges the defendants with having refused to let him see the books, records and accounts of the Local Union in violation of 29 U.S.C.A., § 431(c). By stipulation made at the time of the trial, this latter charge was limited to the Local Union, with no claim in this regard being made against the International Union.

The plaintiff, James R. McCraw, is a pipefitter by trade, and a resident of Chattanooga, Tennessee. The defendant, the International Union, with principal offices in Washington, D. C., is an international labor union for the plumbing and pipefitting trade. Local Union No. 43 is a local labor union chartered by the International Union, the said local having its principal offices in Chattanooga, Tennessee. The plaintiff first became a member of the International Union in 1943 and joined Local Union No. 43 in 1954. The plaintiff has remained a member of the International Union and of the Local Union at all times since becoming a member of the said respective organizations until he was suspended in 1961, which suspension is the subject matter of this lawsuit.

Upon January 26, 1961 the plaintiff filed charges with the Local Union against one C. Earle Williams, who was then the business agent for the Local Union, having served as business agent of the said local from 1949 through 1953 and again from 1956 through 1961. The plaintiff charged said C. Earle Williams with having discriminated against him while business agent of the local in the matter of referrals for employment in the trade. As a background to the filing of this charge, the plaintiff testified to a long history of his efforts to obtain employment in his trade in the Chattanooga area through the Local Union, and contended that Williams, as business agent, had discriminated against him both with respect to joining the local and with respect to referrals for employment. In accordance with the procedures and rules of the Local Union, the charges against Williams were referred by the membership to the Executive Board of the Local Union, which Board dismissed the charges, allegedly upon the ground that they were not properly drawn.

Shortly thereafter the plaintiff again attempted to file charges against Williams for discrimination, but on this occasion the membership voted not to accept the charges.[1]

Thereafter upon February 16, 1961 the plaintiff filed a charge against the Local Union with the National Labor Relations Board wherein he charged the Local Union with an unfair labor practice by reason of discrimination against the plaintiff in regard to securing employment, it being alleged that the said discrimination constituted a violation of Section 8(b) of the National Labor Relations Act. The National Labor Relations Board, after investigation, declined to issue a complaint upon the plaintiff's charges upon the ground of "insufficient evidence" and upon the ground that "it would not effectuate the purposes of the National Labor Relations Act to institute further proceedings at this time."

Upon May 9, 1961, C. Earle Williams filed charges with the Local Union against the plaintiff, charging the plaintiff with having filed the charge against the Local Union with the National Labor Relations Board without having first exhausted all remedies within the Local Union and the International Union. It was stated that the plaintiff, in so filing the charge with the National Labor Relations Board, acted without having first exhausted his remedies within the Local Union and the International Union and had thereby violated Section 222 of the International Union's constitution.[2] A hearing was held by the Executive Board of the Local Union upon these charges

upon June 15, 1961. The plaintiff was notified of the hearing and was present. Also present were those whom he had asked to be present as witnesses. At this hearing the plaintiff acted quite emotionally, if not angrily, when the Executive Board asked that the door to the hearing room be closed at the beginning of the hearing. Thereafter the plaintiff presented no witnesses and declined himself to make any statement other than to state his name and to affirm that he had filed charges with the National Labor Relations Board. Following the hearing the Executive Board voted to sustain the charges and imposed a fine of $100 upon the plaintiff.

In accordance with the constitution and rules of the Local Union and of the International Union, the plaintiff, by letter dated June 29, 1961, appealed the $100 fine to the General Executive Board of the International Union. Payment of the fine was suspended by the International Union pending decision by its General Executive Board. Upon appeal to the International, the plaintiff was accorded the right to submit any additional statement, but failed to do so. Pending the appeal, the International Field Representative, Lev G. Loring, came to Chattanooga to investigate the appeal. Notice was sent to the plaintiff to meet with Mr. Loring at a specified date and place. The plaintiff denies receiving this notice, however, and he did not appear for the said meeting. Thereafter Mr. Loring recommended that the International Union affirm the action of the local Executive Board in imposing the fine. Upon

---

1. There was testimony in the case of various other charges and counter charges having been filed with the Local Union involving the plaintiff, James R. McCraw, the business agent, C. Earle Williams, and another union member, James R. Dunn. Much of the testimony in this regard is not considered material to the essential issues of this lawsuit and no summary or finding of fact will be made by the Court with reference to such matters except as hereinafter expressly stated in the Opinion.

2. Section 222 of the United Association Constitution reads as follows: "No officer, representative or member of United Association or its local unions, or district councils, or state or provincial associations shall resort to court proceedings of any description, in any manner pertaining to this organization or its local unions, or his membership, or his office, until all remedies provided for within the United Association's Constitution have been fully exhausted. Violation of this section shall be sufficient cause for expulsion from membership in the United Association and its local unions."

September 6, 1961 the International Union advised the plaintiff that its General Executive Board had denied the appeal and affirmed the action of the Local in placing a $100 assessment against him. The plaintiff appealed this action to the General Convention of the International Union. This appeal is pending, as the next General Convention will not be held until 1966. In the meantime, the $100 assessment remains in effect.

The plaintiff has at all times declined and refused to pay the $100 fine, contending that it was illegally and improperly imposed. Following the imposition of the fine by the Local Union upon June 15, 1961, the plaintiff continued to tender his dues and otherwise seek to maintain his membership and standing in the Union. The Local Union, however, from and after July 1, 1961, declined to accept the plaintiff's dues without payment of the fine first being made. About this same date the plaintiff was suspended from membership for non-payment of dues. Following the plaintiff's appeal to the International, and notification by the International that payment of the fine was suspended pending action by the General Executive Board on the appeal, the plaintiff continued to tender his dues, and otherwise seek to maintain his membership and standing in the Union, but by this time the Local Union declined to accept the dues without prior payment by the plaintiff of a $1.00 reinstatement fee. This $1.00 reinstatement fee the plaintiff likewise has at all times declined and refused to pay, contending that his suspension for non-payment of dues was at all times illegal and improper. The action of the Local Union in declining to accept payment of dues from the plaintiff without the plaintiff's first paying the fine is based upon a provision in the International constitution to this effect. Likewise, the suspension of the plaintiff from membership for non-payment of dues and requirement of the payment of a $1.00 reinstatement fee prior to acceptance of the dues by the Local Union purport to be based upon rules of the Union. The result has been that the plaintiff has been suspended from membership in the Local Union at all times from and after July 1, 1961.

Following the imposition of the fine and following the refusal of the Local Union to accept the plaintiff's dues from and after July 1, 1961 without prior payment by the plaintiff of the $100 fine and/or the $1.00 reinstatement fee, the plaintiff sought to attend union meetings and participate as a member in union activities. However, upon September 28, 1961, the plaintiff was requested to leave a meeting of the Local Union upon the ground that he was suspended for non-payment of dues. The plaintiff refused to leave the meeting. Thereupon he was physically removed from the meeting room by the president of the Local with the assistance of one or two members. The plaintiff was placed outside of the door to the meeting room and the door closed. The force and means used for his removal do not appear to have exceeded what was reasonable and necessary to accomplish this purpose considering his refusal to voluntarily leave and his resistance to being removed. In the course of the removal, or as a result of the plaintiff's efforts to regain admission after the door had been closed, he suffered a sprained or dislocated right thumb. For this injury he received conservative medical treatment over a period of six weeks and the injury has resulted in a ten per cent permanent disability to the plaintiff's right thumb by reason of pain and limited flexion. He incurred medical expense in the sum of $47.00.

The plaintiff introduced extension evidence of alleged discrimination on the part of the Local Union, acting through its business agent, C. Earle Williams, in the referral of the plaintiff for employment over a period of years prior to July 1, 1961. The defendant likewise introduced extensive evidence of the plaintiff's lack of employment during this same period by reason of the plaintiff's alleged incompetence upon the job. No summary of this testimony or finding of fact will be made with regard to any al-

leged discrimination in employment prior to July 1, 1961, the date of the fine and suspension of the plaintiff from membership, for, as hereinafter more fully stated by the Court, any action for such alleged discrimination is not a matter for adjudication in this lawsuit. However, it is also contended by the plaintiff that, from and after July 1, 1961, the date of his suspension from membership, the Local Union continued to discriminate against him in the matter of referral for employment and that this discrimination was a direct consequence of and in furtherance of the alleged illegal discipline and suspension from membership on July 1, 1961.

It appears that a hiring hall plan was put into effect by the Union and employers in May 1961. This written plan provided for the referral by the Union, when a request for employees was made by employers who were signatories to the plan, of qualified pipe fitters. No discrimination was to be made with regard to membership or non-membership in the Union. Provision was made in the plan for the maintenance of separate lists, designated as A and B, of those pipe fitters who had been employed within the local jurisdiction for more than 1200 hours within the past five years, and those who had been employed for less than 1200 hours within the past five years, with preference being given to those employed more than 1200 hours by requiring that this list be exhausted before referrals would be made from the list having less local experience and time on the job. Considerable controversy over the adoption of the plan exists in the record, but no finding of fact in this regard is necessary or appropriate to the issues here involved. The plaintiff applied for listing upon the hiring hall plan, and was listed. No discrimination is claimed with regard to his original listing on the plan. However, it is contended that no separate A and B lists were kept prior to August 1961, by which time the plaintiff's name had approached close to the top of the list. It is contended by the plaintiff that at this juncture,

and by reason of his non-payment of the fine, the list was revised and he was placed upon the B list as not having worked 1200 hours locally, and he was thereby discriminated against in referrals. The plaintiff was referred for employment by the Local Union upon December 4, 1961 and shortly thereafter accumulated sufficient hours to be eligible for listing upon the A list. Whereupon he was accordingly so listed. He has since been referred for employment in accordance with the hiring hall plan, and from and after December 4, 1961 no discrimination in this regard is claimed or established by the evidence.

With regard to the denial of access to union records, the plaintiff testified that he had asked to see the books and records at various times, and particularly within the two or three weeks before the trial, but had been refused. He stated that he specifically requested to see the minutes of the Local Union relating to the date when he was fined and suspended from the Union. H. D. Pickett, the present business agent for the Local Union, confirmed the plaintiff's request three weeks prior to the trial for the minutes of the regular and Executive Board meetings at the time the plaintiff was fined and suspended, but contended that these were the only records requested by the plaintiff or refused by the Union. These minutes were made available at the trial.

■ Before undertaking any discussion of the merits of this lawsuit, the Court is confronted with an issue of jurisdiction. The Labor-Management Reporting and Disclosure Act provides in Section 101(a) (4) [29 U.S.C.A. § 411 (a) (4)] that a union member may be required to exhaust reasonable hearing procedures, not to exceed four months in duration, within the union, before action may be instituted under the Act in a federal district court. This is based upon the Congressionally approved policy of affording unions the opportunity of correcting their own errors and encouraging union responsibility, initiative and self-discipline in this respect.

██ It is not disputed here that the plaintiff has resorted to the internal union hearing procedures with respect to the fine imposed upon him, nor that more than four months did elapse from the date of the Local Union Executive Board hearing upon June 15, 1961 until the filing of this lawsuit upon December 1, 1961. It is contended, however, that the plaintiff resorted only to a technical exhaustion of internal union remedies, and that he made no good faith presentation of his case to the Union. In support of this it is pointed out that the plaintiff failed to make any effective statement of his case before the Local Union Executive Board, failed to meet with the International Field Representative, and failed to make any supplemental statement of his case upon appeal to the International General Executive Board. An article by Professor Aaron in 73 Harvard Law Review 869 is cited by the defendants as advancing the proposition that conscientious presentation by the plaintiff of his claim to the Union, not mere technical exhaustion of union remedies, is required. If it is Professor Aaron's intention to advocate that bad faith use of internal settlement procedures when shown, may be grounds for denying resort to the courts under the Act, this would appear to constitute a sound interpretation of the Act. However, the Courts should not be required to examine and pass judgment upon the skill or competence with which a member presents his claim to the union in each case before permitting a resort to the courts and it is not believed that such a construction should be placed upon the statute. Moreover, as pointed out in the case of Detroy v. American Guild of Variety Artists, 2 Cir., 286 F.2d 75, permissive and not mandatory language is used in the Act when it states that the member "may be required" to exhaust internal union remedies, and the Court must therefore look to the facts and equities of each case. Here to dismiss the plaintiff's suit as prematurely filed in this court would amount to an adjudication upon the merits, for since the plaintiff has exhausted his union remedies, he would have nowhere else to go, and therefore could not later refile. Bad faith on the part of the plaintiff might warrant such a dismissal, even though it effectively operates as a dismissal on the merits. But in the opinion of the Court the evidence does not go so far here as to establish bad faith on the part of the plaintiff.

██ Turning to the merits of this lawsuit, it should be pointed out at the inception that this is not a suit for damages for discrimination per se, nor is it an action for the tort of assault and battery. As provided in the Pre-Trial Order, this is a suit in which a union member seeks relief under the Labor-Management Reporting and Disclosure Act of 1959, which federal statute specifically vests jurisdiction in the federal district courts. Jurisdiction of an action by a union member against the union for discrimination in employment is vested in the National Labor Relations Board under the National Labor Management Relations Act (29 U.S.C.A. § 158). Rekant v. Shochtay-Gasos Union, D.C., 205 F.Supp. 284; Lankford v. I. B. E. W., D.C., 196 F.Supp. 661.

██ It does appear that all of the requirements of Section 411(a) (5) were met, including notice of the specific charges, reasonable opportunity to prepare a defense, and the affording of the plaintiff of a full and fair hearing. The plaintiff was given a statement of the specific charges against him on or about May 9, 1961. He was notified of the hearing upon June 15, 1961 before the Executive Board of the Local Union and appeared for this hearing along with those whom he had requested to appear as his witnesses. No basis appears in the record for questioning the impartiality of the Executive Board or the procedure followed by them. The closing of the door to the hearing room does not appear to have deprived the plaintiff of the right to be heard nor of the right to present his witnesses, nor does it necessarily reflect upon the impartial nature of the hearing, but it rather appears to be

a reasonable rule to secure an orderly hearing. The plaintiff's failure to present witnesses and refusal to make a statement on his own behalf was by his own choice, and of this he cannot be heard to complain.

■ However, the Court is of the opinion that whether the hearing by which the fine was imposed complied with the requirements of Section 411(a) (5) is not determinative of the legality of the fine and of the subsequent discipline imposed upon the plaintiff by the defendants. Although no violation of Section 411(a) (5) may have occurred, the issue remains as to whether the fine and subsequent discipline violated any of the other provisions of Section 411. The Court is of the opinion that the action of the Union in imposing the fine upon the plaintiff did violate Section 411(a) (4) which, with certain provisos, prohibits unions from disciplining members for instituting actions before any court or administrative agency. One proviso is that the member must first exhaust reasonable hearing procedures within the union, not to exceed four months. It is insisted by the defendants that the plaintiff failed to exhaust his remedies within the Union before going to the National Labor Relations Board within less than a month after filing charges within the Union against the business agent. The Court cannot agree with this contention. In the first place, it appears from the record that the plaintiff did exhaust his remedies within the Union before going to the National Labor Relations Board. He filed charges of discrimination with the Union twice. The first time these charges were declined by the Executive Board. The second time the charges were declined by the membership. The only evidence in the record is to the effect that after the charges were declined by the membership there was no provision under the union procedures for pressing the charges further. In the second place, it is not required that the plaintiff utilize four months in pursuing internal union remedies, but rather that he either exhaust his internal remedies or utilize them "not to exceed four months" before filing with the N.L.R.B. In the third place, it is not clear that Section 222 of the union constitution, which it is charged the plaintiff violated, forbids resort to an administrative agency such as the N.L.R.B. This section merely forbids "resort to court proceedings of any description." In determining whether discipline was properly imposed for violation of Section 222, any ambiguity or uncertainty in the constitution must be construed against the union and in favor of the member, in accordance with well established principles of documentary construction. So construed resort to an administrative agency would not be resort to a court and would therefore not constitute a violation of Section 222.

The Court therefore concludes that the action of the Local Union in imposing the $100 fine upon the plaintiff upon June 15, 1961, which action was affirmed by the International Union upon September 6, 1961, was in violation of Section 411(a) (4) of Title 29 U.S.C.A. Thereafter the action of the Union in suspending the plaintiff from membership, declining to accept his tender of dues, and excluding him from union meetings and activities did constitute a denial of equal rights and a denial of freedom of speech and assembly in violation of Sections 411(a) (1) and (2).

Turning next to the plaintiff's claim for damages, as stated above, the plaintiff contends that he sustained losses both by reason of the Local Union's discriminating against him in referrals for employment and by reason of personal injuries suffered at the time he was put out of a union meeting.

■ This lawsuit being founded upon a violation of 29 U.S.C.A. § 411, it is obvious that the only damages which may be awarded under the authority of the statute are those which directly and proximately result from the violation. It is likewise obvious that any loss sustained by the plaintiff by reason of discrimination prior to the date of the violation of Section 411 could not be the

result of such violation and could not be considered or adjudicated in this lawsuit.

 The Court is of the opinion that the evidence fails to establish that the plaintiff was discriminated against under the hiring hall plan after June 1961, or that the alleged moving of his name on the list in August of 1961 was in furtherance of any improper or illegal discipline under 29 U.S.C.A. § 411. Rather, it appears that whatever alteration of the lists was made in August 1961 was for the purpose of making the lists comply with the provisions of the plan, and not to discriminate against or discipline the plaintiff. The fact that the lists may not have been correct in accordance with the hiring hall plan prior to August 1961 and that the lists were then corrected to conform to the plan does not constitute a matter of which the plaintiff can rightfully complain.

The Court is of the opinion that the evidence fails to establish that the plaintiff sustained any loss of employment from and after July 1, 1961 by reason of discrimination on the part of the Union. Even if such discrimination were established, any loss by the plaintiff from unemployment by reason of discrimination during the period from July 1, 1961 when the plaintiff was improperly excluded from membership until December 4, 1961 when he was referred for employment, would at most be wholly a matter of conjecture. It appears from the record that there was substantial unemployment in the trade within the Chattanooga area at that time.

 Considering next the plaintiff's claim for damages by reason of injury to his thumb suffered at the time he was put out of a union meeting upon September 28, 1961, the Court does not believe that this injury can be said to be the direct, immediate and proximate result of a violation of Section 411. It occurred in the course of the plaintiff's resistance to being excluded from a union meeting after he had been suspended from membership. Even though the plaintiff was being illegally disciplined,

his remedy was to resort to the orderly process of a union hearing or to the court, not to the use of physical resistance as a means of correcting the error. But for his physical resistance to being excluded, he would not have been injured. The plaintiff was requested to leave. He refused. An attempt was made to remove him from the meeting. He resisted. After he was removed he attempted to forcibly re-enter by beating upon the door. Even though his resistance might be held to be lawful in an action for assault and battery or even though his injury may have been the direct and proximate result of an assault and battery, this does not alter the conclusion that his injury was not a direct and proximate result of a Section 411 violation.

 With regard to the plaintiff's action against the Local Union for access to union records under 29 U.S. C.A. § 431(c), the plaintiff's testimony reflected a general request for union records extending over a period of time. This general request is not sufficient for the Court to identify what records the plaintiff seeks, whether they have been denied, whether they are records of the kind required to be disclosed under Sec. 431(c) or whether the plaintiff has shown just cause for having them produced. The records referred to in Sec. 431(c), the disclosure of which may be ordered, refer to "books, records and accounts necessary to varify *such report.*" (Emphasis added.) The *report* referred to is the report of organization, constitution, by-laws, dues, etc., provided for in subsection 431(a) and the annual financial report provided for in subsection 431(b), which report is required to be filed annually by labor unions with the Secretary of Labor. The plaintiff has wholly failed to make any showing that the records he seeks in any way relate to the report called for in subsections 431(a) and (b) or that they are sought for the purpose of verifying such reports. Without such evidence in the record, there likewise could be no evidence upon which a determination of just cause

might be made by the Court. The only specific records identified by the plaintiff as being sought by him were the minutes of the membership meeting and the minutes of the Executive Board meeting relating to the dates when he was fined by the Executive Board and the fine was approved by the membership. These records appear to have been sought for the purpose of the preparation of his lawsuit with regard to the allegations of wrongful discipline under Sec. 411. These records could have been made available at any time by discovery or subpoena and were made available at the time of the trial. The plaintiff's claim for disclosure of the records under Sec. 431(c) should therefore be overruled.

 No provision is made for the allowance of attorney fees in an action under Sec. 411 or Sec. 412. The legislative history of this statute, popularly known as the Landrum-Griffin Bill, reflects that the Bill was so interpreted at the time of its enactment.[3] The Court is therefore without jurisdiction to award attorney fees on this phase of the lawsuit. Although allowance of attorney fees is provided for in an action under Sec. 431(c), in view of the Court's decision denying the plaintiff relief, no award of attorney fees can be made on this phase of the lawsuit.

An order will therefore enter setting aside the $100 assessment made by the defendants against the plaintiff, and providing that upon tender by the plaintiff within thirty (30) days of the entry of the Order of current dues only, the defendant Union shall accept such dues, without the payment of any reinstatement fee, and will reinstate the plaintiff to full membership without loss of any rights or privileges by reason of any period of suspension from and after July 1, 1961. The plaintiff shall be awarded nominal damages in the sum of One ($1.00) Dollar against both defendants. This Opinion shall constitute the findings of fact and conclusions of law.

An Order will enter accordingly.

---

3. See 2 Legislative History LMRDA, 1281, where Senator Goldwater made these remarks: "Although the Bill permits the union member himself to sue for infringement of his rights, the nature of the suit is such as to promise, even if successful, little in the way of monetary damages except in the rare case where the plaintiff's job rights or job tenure have been adversely affected. Moreover, the Bill does not grant him, even where successful in his suit, reasonable counsel fee or other costs."