against its vendor in Missouri although it states it would be able to do so in New York.

Therefore, having fully considered the matter, the Court concludes that plaintiff has failed to make a prima facie showing of facts sufficient to support the exercise of personal jurisdiction in this case. Plaintiff has shown us no case wherein a Court found it had personal jurisdiction over a nonresident defendant with similar contacts to the forum as the defendant herein has to Missouri. Thus, while it appears that Grand Prix may have "transacted business" within the State of Missouri, we cannot say that it has sufficient minimum contacts with this forum such that the maintenance of jurisdiction herein would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Nor can we say that Grand Prix purposefully availed itself of the privilege of conducting business within the state of Missouri, thus invoking the benefits and protections of Missouri's laws. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). We cannot say that Grand Prix's activities within this forum give rise, directly or indirectly to the asserted cause of action. *Aluminum Housewares Co. Inc. v. Chip Clip Corp.,* 609 F.Supp. 358, 361 (D.C.Mo.1984).

Accordingly, IT IS HEREBY ORDERED that defendant's motion to dismiss for lack of personal jurisdiction be and the same is hereby SUSTAINED.

■ Additionally, while we concur with plaintiff that section II of defendant's Memorandum in Support of its Motion to Dismiss, alleging faulty service of process in this case, is not warranted by existing law or a good faith argument for the extension, modification or reversal of the same, we do not feel that this memorandum was signed in violation of Rule 11 of the Federal Rules of Civil Procedure. Paragraph 7 of the Complaint could be construed as an attempt to assert jurisdiction in this Court under the Magnuson-Moss Warranty Act.[2]

Accordingly, plaintiff's request for the sanction of attorney fees is DENIED.

**Bernard GOSLING, Plaintiff,**

v.

**ACE HARDWARE CORPORATION, et al., Defendants.**

No. 84 C 0103.

United States District Court, N.D. Illinois, E.D.

Aug. 9, 1985.

---

**2.** See footnote 1, supra.

**1196**

Thomas Geoghegan, of Despres, Schwartz & Geoghegan, Chicago, Ill., for plaintiff.

Sherman Carmell, of Carmell, Charone & Widmer, Ltd., Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This federal labor case is before the court on plaintiff Bernard Gosling's motion to dismiss defendant's counterclaim and for a more definite statement of count VII of that counterclaim. Also before the court is defendant's motion to join additional parties and to serve an additional third-party defendant. Defendant and third-party plaintiffs also move to dismiss voluntarily count VII of their counterclaim. For the reasons stated below, plaintiff's motion to dismiss is granted in full and his motion for a more definite statement is moot. Defendant's motion to join and serve additional parties is denied and the motion voluntarily to dismiss count VII is granted.

The present motions grew out of Gosling's filing a five-count second amended complaint against defendant International Brotherhood of Teamsters, Local 705 ("Local 705"). Gosling had filed the original complaint on January 5, 1984, charging his employer with breach of the collective bargaining contract in violation of § 301 of the Labor Management Relations Act, 29 U.S.C. § 185,[1] and Local 705 with breach of its duty of fair representation, as well as of other provisions of federal labor and state law. According to Gosling, his troubles with his employer and with Local 705 arose out of his membership in Teamsters for a Democratic Union ("TDU"), which he describes as a democratic reform group challenging the policies of Local 705 officers.

In retaliation against Gosling for his participation in this dissident activity and his exercise of his rights to free expression under the federal constitution and provisions of federal labor law, Gosling alleges that Local 705 repeatedly refused to process his grievances and induced his employer to violate the collective bargaining contract. In addition, Gosling was severely beaten by Local 705 officials when he arrived at the union hall on October 3, 1983, having been promised by Local 705 officials that he would receive a hearing on one of his grievances on that date. During the beating, Gosling's documents were seized, he was told he would be expelled from the union, and ten persons struck and grabbed him. These allegations are contained in Gosling's original and first amended complaints.

---

1. The employer is no longer a defendant to this action, having been dismissed with prejudice on April 5, 1985 on Gosling's motion.

On December 20, 1984, Gosling appeared at the Local 705 union hall to attend a regularly scheduled meeting and to hand out TDU literature with Aaron Kesner. When Gosling tried to enter the hall, he encountered at least two Local 705 officers or agents who were stationed at the door handing out identification cards to the incoming members. The two officials stopped Gosling and Kesner at the door and, without provocation or other cause and with the approval of Local 705 and its principal officers, assaulted and beat Gosling by "striking and beating him in the eye, head, neck, chest, leg and groin, choking and kicking him, and causing profuse bleeding from his eye." (Second Amended Complaint ¶ 55.) As a result of this beating, Gosling suffered "serious injury to his eye, face, neck, back and leg, disfigurement of his face, neurological and other physical injuries, pain and suffering and acute emotional and psychological distress, which has been manifested in various physical symptoms." (*Id.* at ¶ 56.)

Soon after this December 20, 1984 event, Gosling moved to amend his pleadings to add a claim based on the most recent assault and battery by Local 705 members. Count V of the current pleadings, Gosling's second amended complaint, contains these allegations. Local 705 answered, and filed a seven-count counterclaim in which it named Gosling as a counterdefendant and attempted to join Aaron Kesner as a third-party defendant. Moreover, the counterclaim added three additional parties as third-party plaintiffs, union members James Colgan, Carmen Levato, and John Palumbo. In the counterclaim, Local 705 attempts to state claims against Gosling and Kesner for their actions in initiating criminal proceedings against those whom they considered responsible for the 1984 beating. According to Local 705, in doing this, Gosling and Kesner violated Local 705's and its officers' rights under federal labor and state tort law.

### Motion to Dismiss

■ In counts III and IV of the counterclaim, Local 705 repeats the allegations of malicious prosecution against Gosling and Kesner that are contained in the third-party complaint of Colgan, Levato, and Palumbo at counts I and II. Those allegations, in pertinent part, are as follows:

On or about December 20, 1984, counterdefendants, acting individually and in concert, instituted or caused to be instituted in the Circuit Court of Cook County, Illinois, without probable cause or proper motive, criminal proceedings for battery ... based on allegations in ¶¶ 28–32 of counterdefendant Gosling's second amended complaint.

On April 10, 1985, after a trial in which counterdefendants were the only persons to testify in support of the charges, the criminal proceedings were finally terminated by judgments of not guilty.

(Counterclaim, count I at ¶¶ 5–6.) These counts must be dismissed for failure to state a claim for two independent reasons. First, Local 705 has never been a subject of a criminal complaint or proceeding initiated by Gosling; Gosling complained about the actions of Levato, Palumbo, and Colgan. Local 705 admits as much but argues that since its agents and representatives were prosecuted, it also has standing to state a malicious prosecution claim. As support for this novel argument, Local 705 cites *Caspers v. Chicago Real Estate Board,* 58 Ill.App.2d 113, 117, 206 N.E.2d 787 (1st Dist.1965). In that case, the Court assumed in dictum that a principal shareholder and president of a corporation could state a claim for malicious prosecution where the offending suit was maintained against the corporation. Even assuming that *Caspers* is a holding on that issue (the dismissal of the suit was upheld for different reasons), *Caspers* involved a case where the plaintiff was an "alter ego" of the corporation, and for that reason it is entirely different from this case. Here, Local 705 has not even attempted to allege that three of its union officers were its alter ego.

The union makes the interesting argument that if Gosling can hold it vicariously

liable for the acts of its agents, then it should be able to sue in its own right for acts done to its agents under an alter ego theory. While the court makes no ruling on when Local 705 could sue on behalf of its agents, Local 705's argument misses the mark. A showing of respondeat superior liability is completely different from liability or capacity to sue based on the alter ego theory.

■ Local 705's malicious prosecution claim must fail for a second reason. In Illinois, a claim for malicious prosecution must allege facts tending to show:

> (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. [Citation omitted.]

*Gonzalez v. Chicago Steel Rule Die & Fabricators Co.*, 106 Ill.App.3d 848, 62 Ill. Dec. 577, 578, 436 N.E.2d 603, 604 (1st Dist.1982) (citing *Joiner v. Benton Community Bank*, 82 Ill.2d 40, 45, 44 Ill.Dec. 260, 263, 411 N.E.2d 229, 232 (1980)). Illinois case law makes clear that even actions resulting in a finding for the plaintiff and commenced with malice will not state a claim for malicious prosecution unless also commenced without probable cause. Probable cause means "such a state of facts, in the mind of the prosecutor, as would lead a man of ordinary action and prudence to believe or entertain an honest and sound suspicion that the person accused is guilty...." *Carbaugh v. Peat*, 40 Ill. App.2d 37, 47, 189 N.E.2d 14, 19 (2d Dist. 1963). Mistake or error not amounting to gross negligence will not affect the question of whether the person instituting the claim had an honest belief in the guilt of the plaintiff. *Mangus v. Cock Robin Ice Cream Co., Inc.*, 52 Ill.App.3d 110, 9 Ill. Dec. 769, 773, 367 N.E.2d 203, 207 (1st Dist.1977).

Here, the counterclaim contains no allegations tending to support the bare legal conclusion that the criminal complaint was brought without probable cause. Gosling argues that various trial rulings demonstrate he would prevail on a motion for summary judgment on the issue of probable cause, but the court does not consider the merits on this motion. Rather, the court is concerned only by the omission in Local 705's allegations of any support for its conclusion concerning this important element of a malicious prosecution claim. Counts III and IV are therefore dismissed for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

■ In count V, Local 705 and third-party plaintiffs allege that Gosling and Kesner instituted criminal proceedings "as part of a conspiracy and with intent to deprive or chill counterplaintiffs' ... rights, including the right to meet and assemble freely with other members and to express views, arguments or opinions, and to nominate and elect candidates for union office ... and the right of counterplaintiff Local 705 to promulgate and expect compliance with reasonable rules governing the responsibility of members to Local 705." They allege that the institution of the criminal proceedings violated their rights under the Labor Management Reporting and Disclosure Act ("LMRDA") § 101(a)(1) & (2); 29 U.S.C. § 411(a)(1) & (2). Local 705 brings its LMRDA claim under 29 U.S.C. § 412, allowing "any persons" whose rights are secured under § 411 and other provisions to bring a civil action for relief. It should be noted initially that these allegations are completely conclusory. For example, there is simply no allegation even suggesting that counterdefendants' actions in any way infringed on or chilled Local 705's rights to promulgate and maintain reasonable rules and regulations of any kind. Assuming counterplaintiffs could allege such facts, the court will consider whether §§ 411 and 412 are applicable here.

Section 411(a)(1) & (2) provides that all members of a labor organization shall have equal rights and privileges regarding union business and elections, and shall have freedom of speech and assembly, subject to the union's rights to maintain reasonable rules regarding union members' responsibilities to the union. Assuming that Local 705

may maintain an action under § 411 against its own members, count V still fails to state a claim. The Second Circuit has clearly held that union action is a prerequisite to liability under § 412; individual union members may be sued thereunder to the extent that they acted on behalf of the union. *Rasario v. Amalgamated Ladies Garment Cutters' Union, Local 10*, 605 F.2d 1228, 1246–47 (2d Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980); *see also Morrissey v. National Maritime Union of America*, 544 F.2d 19, 24 (2d Cir.1976). Sections 411 and 412 were designed in part to "curb the power of overweening union officials," *Rosario*, 605 F.2d at 1246, and not to discipline union membership. *See generally* T. Kheel, *Labor Law* § 43.01[2] (1985 & Supp. 1985). There is no allegation that Gosling's and Kesner's actions had any official character.

Local 705 cites *International Brotherhood of Electrical Workers, Local 336 v. Illinois Bell Telephone Company*, 496 F.2d 1, 2 n. 2 (7th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 120 (1974), for the proposition that unions and union officials are not the only proper defendants under § 412. However, that case involved a suit by the union against the employer, brought for violation of rights under § 411(a)(4), a provision that explicitly instructs that interested employers may not participate in various ways in suits brought by union members. Thus, the case is distinguishable because Local 705 is not suing an employer and is not relying on § 411(a)(4). *Teamsters Local 1 v. International Brotherhood of Teamsters*, 419 F.Supp. 263, 272 (E.D.Pa.1976), is similarly distinguishable, since it involved a suit by a local against an international union. Local 705 has cited no case, and the court's research finds none, that stands for the proposition that a union and its members may sue other union members under § 412, where those defendant members are not acting in any official union capacity. The court will not construe §§ 411 and 412 as general provisions under which rank and file union members not acting on behalf of the union may be disciplined, absent statu-

tory language and legislative history tending to support that broad interpretation. To hold otherwise would render § 412 an open door to the use of the federal courts as a forum of first resort for intraunion disputes unrelated to abuses of union power against members and would allow alternate nonjudicial dispute resolution mechanisms to be sidestepped.

This finding obviates a decision as to the identity of proper plaintiffs under §§ 411–412. Count V fails to state a claim upon which relief may be granted. Count VI, which is a claim for punitive damages based on the allegations of count V, is thus also insufficient. The motion to dismiss counts V and VI is therefore granted. Fed.R.Civ.P. 12(b)(6).

### Motion to Join Additional Parties

The court need not address the propriety of joinder in this case, since the rulings on the claims asserted by defendant Local 705 make clear that all of the claims asserted by the putative third-party plaintiffs and against Gosling and the third-party defendant Kesner fail to state a claim. Third-party plaintiffs Colgan, Levato, and Palumbo make the same insufficient allegations of malicious prosecution in their counts I and II as does Local 705 in counts III and IV. Moreover, their LMRDA claims, joined with Local 705's in counts V and VI, are also insufficient, since Kesner and Gosling are not proper defendants. Joinder under these circumstances would be a futile act. The motion to join additional parties is therefore denied.

### Count VII

Local 705 and the individual third-party plaintiffs have offered to withdraw count VII, a claim brought under Fed.R.Civ.P. 11. Since the court is unaware of any implied claim that can be stated thereunder, the court finds this offer—in effect a motion voluntarily to dismiss a claim—wise. Gosling does not object to it. Count VII of the counterclaim is therefore dismissed. This moots Gosling's motion for a more definite statement on count VII.

### Conclusion

The counterclaim is dismissed in its entirety. Gosling's motion to dismiss is

granted, as counts I through VI fail to state claims upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). The motion voluntarily to dismiss count VII is granted. Local 705's motion to join additional parties is denied, as such joinder would be futile under the present allegations. Gosling's motion for a more definite statement is moot.

It is so ordered.