Lawrence E. WARING, Plaintiff,

v.

INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, LOCAL 1414 OF SA-VANNAH, GEORGIA and John H. Mackey, Individually and as Agent for Defendant Local 1414, Defendants.

No. CV486–401.

United States District Court,
S.D. Georgia,
Savannah Division.

July 17, 1987.

David Roberson, Savannah, Ga., for plaintiff.

Fletcher Farrington, Saunders Aldridge, III, Savannah, Ga., for defendants.

## ORDER

EDENFIELD, District Judge.

By Order of December 5, 1986, this Court found that plaintiff had been suspended from membership in Local 1414 of the International Longshoremen's Association [ILA] without having been afforded the due process protections guaranteed him by section 101(a)(5) of the Labor Management Reporting and Disclosure Act (29 U.S.C. § 411 *et seq.*) [LMRDA]. The Court found additionally that, by virtue of the void suspension, plaintiff had been wrongly prevented from accepting a nomi-

nation for the position of treasurer with respect to certain local union elections scheduled for December 9, 1986. In light of these findings, the Court ordered that elections be postponed for a period of time sufficient to permit the union to afford the plaintiff a full and fair rehearing (and possibly an expedited appeal). If no charges were pressed or if new proceedings terminated in plaintiff's favor, the Court held, plaintiff would be eligible for nomination and election.[1]

Though plaintiff was successful in convincing this Court to exercise its rarely-wielded equitable powers, plaintiff has shown great persistence in pursuing a claim against the defendants for damages allegedly arising out of the rather technical due process violation recognized by the Court. Mr. Waring has also persisted in maintaining a damages claim in connection with defendants' alleged violation of plaintiff's free speech rights. *See* 29 U.S.C. § 411(a)(2). Additionally, plaintiff amended his complaint on February 20, 1987, in order to include state law claims against the defendants for false arrest, false imprisonment, and intentional infliction of emotional distress.[2]

With the date of trial fast approaching, the defendants have come forward with various attacks on Mr. Waring's federal and state claims. Before the Court are the defendant union local's motions for partial dismissal and for partial summary judgment. Also before the Court is defendant Mackey's motion for summary judgment as to individual liability.

## BACKGROUND

Many of the facts surrounding this internal union dispute are reported elsewhere.[3]

---

1. It appears that no charges were pressed against the plaintiff. Subsequent to the issuance of the Court's ruling, Mr. Waring was nominated for the position of treasurer. He ran for office in January of this year and was defeated.

2. In the consolidated pretrial report filed with the Court on July 2, 1987, plaintiff lists as one question for determination by the jury: "Whether the plaintiff was denied equal rights as a member of Local 1414." Violation of the equal

rights provision of the LMRDA, 29 U.S.C. § 411(a)(1) was not specifically alleged either in plaintiff's original or in his amended complaint. Nevertheless, the Court will address plaintiff's equal rights claim in this Order.

3. The Court's Order of December 5, 1986, and its Order of January 13, 1987, denying defendants' motion to dissolve injunction, are reported at 653 F.Supp. 374.

The Court here examines only those factual issues relevant to disposition of the matters at hand.

The incident out of which this case arises occurred on January 8, 1986, when plaintiff caused an article to be published in a local Savannah newspaper. The article announced that one of plaintiff's fellow union members, Eddie McBride, had been elected "Man of the Year" by Local 1414. Local 1414 does not recognize a "Man of the Year." Local 1414's Executive Board, consequently, decided to charge Mr. Waring with violation of several provisions of the international and local union constitutions. The executive board mailed a letter to plaintiff directing him to appear for a hearing concerning the charges. The hearing date was set for January 16, 1986. Plaintiff did not appear. He was convicted *in absentia* and was suspended from union membership for a period of one year. Only "Man of the Year" Eddie McBride, a member of the board, voted for acquittal on all charges.

The letter directing plaintiff to appear before the executive board for a hearing contained a typographical error, by virtue of which plaintiff could have believed that he was to be tried for a violation of a union provision clearly inapplicable to his conduct. Also, the letter sent to plaintiff did not outline the content of the provisions with which plaintiff was to be charged. Thus, plaintiff was not afforded adequate notice of the charges against him. It follows that plaintiff's January 17, 1986 hearing was procedurally flawed. It was this procedural flaw, and defendants' subsequent failure to provide plaintiff with a full and fair rehearing, that prompted this Court to grant injunctive relief in December 1986.

In any event, on January 24, 1986, one week after the executive board took action, a regularly scheduled meeting of ILA Local 1414 was held. Plaintiff was in attendance. When plaintiff rose to question the minutes of a certain executive board meeting that had been held on January 15, 1986, defendant Mackey, the president of the local, informed Waring that he would be required to apologize to the membership for allegedly unruly behavior at a previous meeting before he would be allowed to attend further meetings. Waring refused to apologize and was asked to leave. Waring refused this latter request, as well.

Though there is some dispute as to the nature of plaintiff's conduct at the January 24 meeting, it appears without doubt that his conduct was less than exemplary. According to the minutes, plaintiff's disorderly conduct prompted defendant Mackey to request guidance from the membership, whose "consensus" it was that plaintiff be ejected. It is well worth noting that, subsequent to this consensus having been determined, it was Eddie McBride who suggested (having voted just one week before to acquit plaintiff of all charges of misconduct) that the Savannah Police Department be called to the union hall.

The police were in fact called. Upon their arrival, the police were informed by defendant Mackey that the latter was in charge of the building and that he wanted the plaintiff to leave. The police escorted Mr. Waring out of the building and explained to him that he would be arrested if he reentered the union hall. Plaintiff promptly reentered the building and, consequently, was arrested for criminal trespass. Waring did not resist. He was taken to the Chatham County Jail, where he was booked, forced to remove his clothing, and held for several hours. The criminal trespass charge was dismissed by the Chatham County Recorders Court on January 29, 1986.

On February 7, 1986, plaintiff appeared at yet another regularly scheduled meeting of Local 1414. Plaintiff claims that it was his intention to appeal his suspension at this meeting. However, it is clear that, as of February 7, 1986, plaintiff had not yet complied with proper union procedures for appeal. *See infra.* Upon plaintiff's entrance into the union hall, defendant Mackey directed plaintiff to leave. Plaintiff refused, another consensus of the membership was taken, and it was decided that the police should be called once again. The police arrived, escorted plaintiff out of the

union hall, and told him that he would be arrested if he were to reenter the building. According to one of the policemen, the plaintiff "indicated to us that if he had to go to jail to prove his point, he would go to jail and that people back in the 1960's had to go to jail to prove their point." Askew Affidavit at 2. Plaintiff proceeded back into the building and was arrested for criminal trespass. There seems to be rather convincing evidence that plaintiff asked the police to feign the exercise of excessive force in removing plaintiff from the union hall. The police, naturally, refused this request. Again, plaintiff was taken to the Chatham County Jail, where he was booked, forced to remove his clothing, and held for several hours. The criminal trespass charge was dismissed by the Chatham County Recorders Court on February 10, 1986.

## LAW & ANALYSIS

■ It is clear that plaintiff's state law claims for false arrest, false imprisonment, and intentional infliction of emotional distress relate only to the events that took place on January 24 and February 6, 1986. As to Mr. Waring's LMRDA claims, it appears plaintiff has conceded that these are viable only insofar as they relate to his initial suspension. Notwithstanding plaintiff's concession, the Court takes this opportunity to clarify the matter and to state that the defendant union's motion for partial dismissal as to LMRDA claims arising out of the incidents that occurred at the union hall on January 24 and February 6, 1986 shall be GRANTED. Plaintiff not having made any attempt to pursue internal grievance procedures with respect to his ejections from the union hall, any LMRDA claims that might conceivably have arisen out of those incidents are time-barred by the applicable six-month statute of limitations. *Hester v. International Union of Operating Engineers,* 818 F.2d 1537 (11th Cir.1987).

The Court is left to consider, then, the union's motion for partial summary judgment as to plaintiff's state law claims, and defendant Mackey's motion for summary judgment as to individual liability. The Court proceeds first to address defendants' objections to plaintiff's state law claims.

### A. State Law Claims

Defendants maintain that no union member or representative caused plaintiff to be arrested, and that the plaintiff was arrested for the commission of a crime in the presence of a police officer. Citing as authority the case of *Arrowsmith v. Williams,* 174 Ga.App. 690, 331 S.E.2d 30 (1985) (defendants not liable for false arrest or malicious prosecution where, *e.g.,* decision to arrest is left to discretion of officer), defendants argue that they cannot be held liable for false arrest or malicious prosecution under the circumstances of the case at bar. Defendants also argue that they cannot be held liable under state law for intentional infliction of emotional distress with respect to the incidents that occurred on January 24 and February 6, 1986.

Plaintiff, on the other hand, argues that because he was a member in good standing at all times relevant hereto, as was recognized by this Court in its Order of December 5, 1986, plaintiff had an absolute right to be in attendance at the union meetings from which he was ejected. It is plaintiff's contention, therefore, that he could not properly be asked to leave the union meeting, and that the instigation of his arrest by defendant Mackey, et al. renders the defendants liable to plaintiff under the mentioned state law theories. Plaintiff similarly maintains that defendants may be held liable for intentional infliction of emotional distress by virtue of defendant Mackey's allegedly "vituperative" remarks to plaintiff at the union meetings and the defendants' subjection of plaintiff to the terrors of the Chatham County Jail. Plaintiff's arguments sail wide of the mark.

The Court need not engage in a lengthy analysis of the state law surrounding the torts referred to, for the Court agrees with the parties that the issue of whether plaintiff has a state law cause of action in connection with either the January 24 or the February 26, 1986 incidents must be

resolved by determining whether plaintiff had a right to be on the premises at the time of his arrests. If he did not, then the information provided to the police by defendant Mackey—to the effect that Mackey was "in charge" of the premises and had asked the plaintiff to leave (implying that the union had found plaintiff to have no right to be on the premises)—cannot be considered misleading. In light of the fact that the officers making the arrests have stated that no one directed them to effect either of the two arrests, it would follow that, if Mackey's information was not misleading, plaintiff's arrests for criminal trespass would have to be considered valid warrantless arrests for offenses committed in the officers' presence.[4]

■ Reference to federal labor law indicates that plaintiff did not have a right to be in the union hall in the first instance, much less after he had been requested to leave. That this Court has found plaintiff to have been at all times relevant hereto a "member in good standing," and that he therefore was entitled to injunctive relief and may yet have a right to money damages under the LMRDA is irrelevant to plaintiff's patently contrived state law claims.

With respect to plaintiff's ejection from the January 24, 1986 meeting, the Court finds ample evidence to support a finding that a majority of the membership found plaintiff's conduct to be disruptive and that plaintiff was asked to leave because of his conduct.[5] Even though plaintiff was a "member in good standing," "[n]othing in the LMRDA ... precludes a union from removing a disruptive member from a meeting without first expelling him from membership or suspending his membership." *Rosario v. Amalgamated Ladies Garment Cutters Union,* 605 F.2d 1228, 1239 (2d Cir.1979). Whether plaintiff and his supporters subjectively believe that plaintiff's conduct was not disruptive is immaterial in light of the membership consensus that plaintiff be asked to leave. Therefore, defendant Mackey's representations to the police were not inaccurate and, when the plaintiff reentered the union hall after having been directed not to do so, the officers had good cause to arrest him for criminal trespass.

■ As to *both* incidents of ejection, moreover, it is clear that, notwithstanding the procedural errors tainting plaintiff's suspension, plaintiff *could* in fact properly be denied admittance to union meetings (regardless of whether he acted in a disruptive manner) without offending the provisions of the LMRDA. It follows that plaintiff cannot successfully assert state law false arrest or similar claims the viability of which depends on a finding that plaintiff was rightfully on the premises.[6] A union

---

**4.** As the defendants point out, "[a]n arrest for a crime may be made by a law enforcement officer either under a warrant or without a warrant if the offense is committed in his presence...." O.C.G.A. § 17-4-20. The crime of criminal trespass has been committed, *inter alia,* where "[a] person ... knowingly and without authority ... [r]emains upon the land or premises of another person ... after receiving notice from the owner, rightful occupant, or, upon proper identification, an authorized representative of the owner or rightful occupant to depart." O.C.G.A. § 16-7-21.

**5.** Plaintiff has submitted a number of affidavits from union members sympathetic to his cause. The affiants state that Waring was not disruptive at the January 24 meeting and that at neither meeting did any member of the union ever direct defendant Mackey to cause the plaintiff to be arrested. The Court finds it significant that in none of these affidavits is it denied that the union membership did indeed decide that

the plaintiff should be asked to *leave* both the January 24 and February 6 meetings. Nor do the carefully worded affidavits under consideration deny the indisputable fact that neither Mackey nor any other union member requested that plaintiff be arrested on either of the occasions in question.

**6.** The facts here are clearly distinguishable from those in *Morrissey v. National Maritime Union of America,* 397 F.Supp. 659 (S.D.N.Y.1975), *aff'd* 544 F.2d 19 (2d Cir.1976), and *Rosario, supra,* 605 F.2d 1228, cases in which union officials wrongfully caused the arrest and/or prosecution of a union member for criminal trespass, and where plaintiff prevailed on his state law pendent claims at trial. In *Morrissey,* the defendants initiated proceedings against the plaintiff in connection with plaintiff's distribution of literature in the union hall. The jury verdict, finding that plaintiff had been prosecuted maliciously, was affirmed. In *Rosario,* similarly, a verdict in favor of plaintiff on false arrest and

member who has been disciplined, even if he has been disciplined improperly and in violation of the LMRDA, may not bypass the internal procedures to which he is bound as a union member or the federal statutes which offer him alternative means of redress. If it were otherwise, unions could not operate effectively; it would be impossible for a union to mete out discipline without risking chaos. "Even though plaintiff was being illegally disciplined, his remedy was to resort to the orderly process of a union hearing or to the court, not to the use of physical resistance [or its equivalent] as a means of correcting the error." *McCraw v. United Association of Journeymen and Apprentices,* 216 F.Supp. 655, 663 (E.D.Tenn.1963), *aff'd,* 341 F.2d 705 (6th Cir.1965). Plaintiff's remedy with respect to his ejections was to utilize the union grievance procedure and, if unsuccessful in that regard, to file an equal rights claim under the LMRDA. Plaintiff did neither. The procedure for attacking his suspension was to file an appeal, *in writing,* with the membership, ILA International Constitution §§ XIX.1.(b) & XIX.3 (a method plaintiff ultimately recognized to be the appropriate one only some time after the incidents under consideration), and, if that avenue led nowhere, to file suit in federal court under the LMRDA (as plaintiff did in December 1986). In either case, his obligation at the very least was to leave the union meetings in question when he was asked to do so. For plaintiff's decision to defy the union's authority, and for the unpleasantness that followed from plaintiff's defiance, the defendants cannot be held liable.

Plaintiff's claims under state law for false arrest, false imprisonment and intentional infliction of emotional distress are thus clearly without merit, and with respect to these claims defendants are entitled to judgment as a matter of law. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106

S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, defendants' motion for partial summary judgment as to plaintiff's state law claims shall be GRANTED.

**B. Defendant Mackey's Motion for Summary Judgment as to Individual Liability**

■ Notwithstanding the foregoing analysis, plaintiff clearly retains his rights to sue under the LMRDA for damages arising out of his initial suspension. The nature of plaintiff's cause of action is discussed more fully below. At this juncture, however, the Court must dispose of defendant Mackey's argument that, because his acts were ratified by the defendant union, Mackey cannot be held liable in his individual capacity with respect to plaintiff's federal claims. The cases cited by defendant Mackey for this proposition are of dubious worth. For example, *Peterson v. Kennedy,* 771 F.2d 1244 (9th Cir.1985), was not a suit brought pursuant to the LMRDA. Rather, *Peterson* was a suit under the NLRA, and the court in that case recognized that " 'the legislative history of § 301 clearly reveals Congress' intent to shield individual employees from liability for damages arising from the breach of ... a collective bargaining agreement.' " *Id.* at 1257 (quoting *Complete Auto Transit, Inc. v. Reis,* 451 U.S. 401, 407, 101 S.Ct. 1836, 1838, 68 L.Ed.2d 248 (1981)).

■ The federal policy advanced by the LMRDA is far different from that served by certain other bodies of federal labor law. The "Act's intent to curb the power of overweening union officials" warrants imposition of liability jointly and severally against a union and its officers in circumstances where the officers have "acted abusively within the scope of their union duties." *Morrissey v. National Maritime Union of America,* 544 F.2d 19, 24 (2d Cir.1976); *Keene v. International Union of Operating Engineers,* 569 F.2d

malicious prosecution claims was upheld where there was apparently a showing of no probable

cause. In *both* of the cited cases, the plaintiffs

1375, 1381 (5th Cir.1978).[7] *See also Aguirre v. Automotive Teamsters,* 633 F.2d 168 (9th Cir.1980); *Rosario v. Amalgamated Ladies Garment, supra,* 605 F.2d at 1246; *Sipe v. Local Union No. 191 United Brotherhood of Carpenters and Joiners of America,* 393 F.Supp. 865, 872 (M.D.Pa.1975). *See generally Urichuck v. Clark,* 689 F.2d 40, 42–43 (3d Cir.1982); *Gosling v. Ace Hardware Corp.,* 616 F.Supp. 1195, 1199 (D.C.Ill.1985). It is true that union officers may assert the *defense* that they acted "within their official capacities and in a good faith effort to discharge their official duties," *Keene, supra,* 569 F.2d at 1381 n. 7. However, in a case such as the instant one where allegations have been made that the officers did not act in good faith in disciplining the plaintiff, the fact that the union has ratified the officers' actions is irrelevant, and the merits of the defense are appropriately left for jury resolution.

Accordingly, defendant Mackey's motion for summary judgment as to individual liability shall be DENIED.

## C. Plaintiff's LMRDA Claims

Plaintiff has at no time clarified the exact nature of his federal claims. Rather, he has broadly stated that defendants' actions in some unspecified manner have violated the equal rights, free speech, and due process guarantees of the LMRDA. Because the Court has neither the time nor the inclination to engage in a lengthy legal discourse with the parties on the eve of or during trial, it seems appropriate here to interpret plaintiff's claims for him, and to outline just what the parties may expect at trial.

### 1. Equal Rights

■ As to plaintiff's claim for infringement of his "equal rights," see 29 U.S.C.

§ 411(a)(1), the Court is at somewhat of a loss as to what acts or occurrences plaintiff means to contend amounted to a deprivation of equal rights. The Court suspects that plaintiff may be seeking to claim that it was a violation of plaintiff's equal rights to discipline him for improperly using the union's name for profit, where other persons were not similarly disciplined. If such is the case, his claim for violation of § 411(a)(1) cannot be pursued. The equal rights provision of the LMRDA guarantees a union member the right to participate in union affairs, and "to be recognized at meetings and to have those meetings conducted in an orderly fashion." *Parker v. Union No. 1466, United Steelworkers of America,* 642 F.2d 104, 106–07 (5th Cir. Unit B 1981). The provision is designed to protect voting rights; it is *not* a general "equal protection" provision, mandating that all disciplinary rules be applied in a nondiscriminatory fashion.[8]

Insofar as plaintiff's equal rights claim may relate to his wrongful suspension and to the fact that he was barred from membership meetings, the Court recognizes that where a member is improperly suspended, the subsequent exclusion of him from union meetings may be considered to be a violation of equal rights, *McCraw, supra,* 216 F.Supp. 655. However, any damages directly arising out of such a denial of equal rights in the case *sub judice* will necessarily be closely related to the damages arising out of the violation of plaintiff's due process and/or his free speech rights, and it would likely be more confusing than helpful to charge the jury on the issue. In any event, if the defendants prevail with respect to plaintiff's free speech claim, and if defendants can prove that the plaintiff would have been suspended had his hearing not been procedurally

had a "right to remain where [they were] entitled to be...." *Rosario,* 605 F.2d at 1248.

**7.** In light of the Fifth Circuit's decision in *Keene,* the case of *Nix v. Fulton Lodge No. 2 of International Association of Machinists and Aerospace Workers,* 262 F.Supp. 1000 (N.D.Ga.1967), cited by the defendant, is of little precedential value with respect to this issue.

**8.** Plaintiff may, on the other hand, be able to make out a *free speech* cause of action if he can prove at trial that he was singled out for discipline in retaliation for having engaged in protected activity. *See infra.*

flawed, it would appear that he will be entitled only to damages for any "emotional distress" arising out of the due process or equal rights violations, *see infra*. In this regard, however, plaintiff is hereby forewarned that, in accordance with the analysis of his state law claims, *supra*, the Court will *not* allow plaintiff to present evidence of alleged emotional distress arising out of the incidents that occurred on January 24 and February 6, 1986.

### 2. Free Speech

Plaintiff has not defined his free speech claim under 29 U.S.C. § 411(a)(2). The Court considers that plaintiff may mean one of two things: 1) that in causing the "Man of the Year" article to be published plaintiff was engaging in protected activity, and that plaintiff was therefore improperly disciplined, or 2) that, notwithstanding the non-protected nature of the publication, plaintiff was singled out for discipline by virtue of his having engaged in protected activity (opposition to union management) that was not related to the newspaper article.

If plaintiff truly means to assert that the publication of the newspaper article under discussion was protected activity, and that he could not properly be disciplined therefor, it may well be that a defendant's motion for directed verdict on the free speech claim would be given due consideration by the Court. *See Loekle v. Hansen*, 551 F.Supp. 74, 81 (S.D.N.Y.1982) ("the dissemination of knowingly false or misleading statements has minimal [LMRDA] implications" where falsehoods are not political in nature or directed toward union officials or management and where statements conflict with the member's "responsibility to the union as an institution"). *Cf. Mallick v. International Brotherhood of Electrical Workers*, 644 F.2d 228 (3d Cir.1981). *See also Rollison v. Hotel, Motel, Restaurant, and Construction Camp Employees*, 677 F.2d 741, 745 (9th Cir.1982) (determination as to what is protected under LMRDA is question of law).

If, on the other hand, plaintiff means to claim that discipline was improperly imposed in a retaliatory fashion, this claim seems viable, even if the facts as thus far elicited would not seem to go far toward supporting it. While perhaps retaliatory discipline claims most properly should be brought pursuant to 29 U.S.C. § 529, *see, e.g., Bradford v. Textile Workers of America*, 563 F.2d 1138 (4th Cir.1977); *DeCampli v. Greeley*, 293 F.Supp. 746 (W.D.Okla. 1968), it is clear that courts in recent years have recognized that retaliatory discipline claims are actionable directly pursuant to § 411(a)(3) or (5). *See generally Cehaich v. International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America*, 710 F.2d 234 (6th Cir.1983); *Taschner v. Hill*, 589 F.Supp. 127, 131–32 (E.D.Pa.1984); *Maier v. Patterson*, 511 F.Supp. 436, 443 (E.D.Pa. 1981). As to whether plaintiff will be able to prove this sort of claim (if indeed it is such a claim that he seeks to pursue),

> [w]hen there is some evidence that the reason for removal from office was permissible and some evidence that the reason was impermissible, the question whether protected activities were a cause for the removal must be resolved by a trier of fact. The motivation for dismissal is thus a question of fact.

*Lamb v. Miller*, 660 F.2d 792, 794 (D.C.Cir. 1981) (citations omitted). *See generally Galke v. Duffy*, 645 F.2d 118, 121–22 (2d Cir.1981) (Oakes, J., dissenting). The shifting of burdens of proof in such a case would be dictated by the Supreme Court's decision of *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1976).

### 3. Due Process

The Court has already determined, in its Order of December 5, 1986, that plaintiff was not afforded the due process guaranteed him by 29 U.S.C. § 411(a)(5). The jury will be instructed with respect to this finding, but will also be instructed that, if it finds in defendants' favor on the free speech claim (if any), and if plaintiff would have been disciplined and suspended even if he had been afforded due process, he may recover only a limited range of damages.

Applying by analogy the Supreme Court's decision in *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252

(1978), [plaintiff] may recover damages attributable to the deprivation of his procedural or due process rights to the extent that he can prove that it caused him mental or emotional distress. [Plaintiff], however, may not recover for damages caused by actual imposition of the invalid sanction itself if [defendants] demonstrate that he would have been convicted and sanctioned even if he had been retried [in accordance with due process guarantees].

*Feltington v. Moving Picture Machine Operators,* 605 F.2d 1251, 1258 (2d Cir. 1979). *See also Newell v. International Brotherhood of Electrical Workers,* 789 F.2d 1186, 1190 (5th Cir.1986). Again, the Court notes that plaintiff will not be permitted to present evidence connected with his ejections from the union hall, or his trips to the Chatham County Jail, in order to prove damages for emotional distress.

## CONCLUSION

For the reasons stated, it is hereby ORDERED that the defendant' motion for partial dismissal is GRANTED. Likewise, defendants' motion for partial summary judgment is GRANTED. Defendant Mackey's motion for summary judgment with respect to individual liability is DENIED. The Court not yet having received consolidated requests to charge, it hereby further ORDERED that consolidated requests to charge shall be filed no later than Wednesday, July 22, 1987.